934 A.2d 1

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Jerold K. NUSSBAUM.**

**Misc. Docket AG No. 38 Sept. Term, 2006.**

Court of Appeals of Maryland.

Oct. 15, 2007.

James P. Botluk, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Commission), for petitioner.

Rignal W. Baldwin, Jr. (Brassel, Baldwin, Kagan & May, PA), Annapolis, for respondent.

Argued Before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER, (retired, specially assigned), and DALE R. CATHELL, (retired, specially assigned), JJ.

BATTAGLIA, Judge.

The Attorney Grievance Commission of Maryland ("Petitioner"), acting through Bar Counsel and pursuant to Maryland Rule 16–751(a),[1] filed a petition for disciplinary or remedial action against Respondent, Jerold K. Nussbaum, on September 6, 2006. Bar Counsel alleged that Respondent violated Maryland Rules of Professional Conduct ("MRPC"),

---

**1.** Maryland Rule 16–751(a) provides:

(a) **Commencement of disciplinary or remedial action.** (1) Upon approval of [the Attorney Grievance] Commission. Upon approval or direction of the [Attorney Grievance] Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

1.15 (Safekeeping Property),[2] 8.1 (Bar Admission and Disciplinary Matters),[3] and 8.4 (Misconduct),[4] as well as Maryland Rule 16–607 (Commingling of Funds),[5] Maryland Rule 16–

---

2. Rule 1.15 provides in relevant part:

   (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

   (b) A lawyer may deposit the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account, but only in an amount necessary for the purpose.

   (c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.

   (d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

3. Rule 8.1 provides in relevant part:

   An applicant for admission or reinstatement to the bar, or a lawyer in connection with a disciplinary matter, shall not; (a) knowingly make a false statement of material fact. . . .

4. Rule 8.4 provides in relevant part:

   It is professional misconduct for a lawyer to:
   * * *
   (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

   (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

   (d) engage in conduct that is prejudicial to the administration of justice. . . .

5. Maryland Rule 16–607 provides in relevant part:

   (a) **General prohibition.** An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16–604 or permitted to be so deposited by section b. of this Rule.

609 (Prohibited Transactions),[6] and Section 10–306 of the Business Occupations and Professions Article, Maryland Code (2000, 2004 Repl.Vol.) (Misuse of Trust Money).[7]

In accordance with Maryland Rules 16–752(a) and 16–757(c),[8] we referred the petition to Judge Barry Hughes of the Circuit Court for Carroll County for an evidentiary hearing and to make findings of fact and recommend conclusions of law. Judge Hughes held a hearing on April 26, 2007, and issued Findings of Fact and Conclusions of Law on June 7, 2007, in which he found by clear and convincing evidence that Respondent had violated MRPC 1.15(a) and (b), 8.1(a), and 8.4(c) and (d), Maryland Rules 16–607 and 16–609, and Section 10–306 of the Business Occupations and Professions Article:

---

**6.** Maryland Rule 16–609 states:

An attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer.

**7.** Section 10–306 of the Business Occupations and Professions Article, Maryland Code (2000, 2004 Repl.Vol.), provides:

A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.

**8.** Maryland Rule 16–752(a) states:

(a) **Order.** Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing. Maryland Rule 16–757(c) states in pertinent part:

(c) **Finding and conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law.

FINDINGS OF FACT

1. Testimony

"The Respondent graduated from the George Mason Law School in 1979, and began his legal career drafting legislation for the Maryland Legislature. He then became a tax lawyer for the Internal Revenue Service, and left that employment in 1984 after obtaining his Masters degree in Taxation from Georgetown University Law School. Respondent was admitted to practice before the Maryland Court of Appeals on December 1, 1983. Since 1984, the Respondent has been in private practice in Annapolis, Maryland. He is presently 55 years of age.

"From 1984 until the present, his practice has remained the same, with approximately 80% of his time being spent on tax work and the balance being spent in estates and trust, corporate and Chapter 11 bankruptcy. Since 1984, the Respondent estimates that he has represented over 2000 clients, with about 5% of those representing bankruptcy clients and 95% of those clients representing referrals from other attorneys.

"The events giving rise to this case took place between the years of 2003 and 2005. During that time, the Respondent testified that he maintained a single attorney escrow account at the Bank of America. He also maintained an operating account and a payroll account for his law practice, which are referred to herein as "operating account(s)." In 2003 the Respondent began experiencing severe cash flow difficulties with his practice, rendering him unable to pay the normal operating expenses of his law practice. Specifically, the Respondent testified that in 2003 over $150,000.00 in receivables became uncollectible by virtue of failed bankruptcy reorganization plans. Generally, such fees are contingent upon the success of the reorganization, and, when unsuccessful, the receivables earned in the reorganization effort become uncollectible. A second difficulty encountered by the Respondent was the delay in the Bankruptcy Court approving earned fees. Ordinarily, bankruptcy fees

are placed in escrow, but can only be dispersed upon Bankruptcy Court approval. Those disbursements took up to 120 days to be approved. As a result of these difficulties, the Respondent sought and exhausted financing assistance, but was still unable to meet the operating expenses of his law firm or to repay his personal loans. It should be noted that in the year 2003, the Respondent earned approximately $106,000.00 from the practice of law and was paying college tuition for two of his children.

"What developed in 2003, and extended into 2005, was a practice whereby the Respondent would write checks from his escrow account, and deposit the same in his operating accounts as needed and without legal authority. When funds were due to be remitted to proper payees from his escrow account, he would cover shortfalls with short term borrowing, by the deposit of rents he received for office space in his law building in Annapolis and/or by using other clients' funds. The Respondent testified that all proper payments from his escrow accounts were made when due, and no client at any time suffered any financial loss as a result of this practice.

"This misuse of escrow funds continued through 2004 and into 2005. The Respondent earned income of approximately $106,000.00 in 2003, $110,000.00 in 2004 and $90,000.00 in 2005 from the practice of law, and had assumed full responsibility for payment of college expenses for two of his children. This misuse of escrow funds came to the attention of the Petitioner when a check drawn on the Respondent's escrow account was returned by his bank for insufficient funds.

"Once contacted by the Petitioner, Respondent submitted to the Petitioner ledgers which he told the Petitioner had been contemporaneously maintained by Respondent and which accurately documented his handling of client funds in the escrow account. Neither representation was true. Eight months later, Respondent voluntarily made known to Mr. Botluk that he had made several entries after the fact,

that the ledgers contained "multiple inaccuracies" and did not accurately reflect his handling of the client funds.

"When the Court contacted the parties to set the Scheduling Order, the Respondent indicated that he would work with Mr. Botluk to prepare a stipulation of facts. Respondent further indicated that he would only present character witnesses at the judicial hearing. In addition to the Respondent, four individuals appeared at the hearing before this Court and testified on the Respondent's behalf. These individuals were Attorney John Newell, the Honorable James F. Schneider, Judge of the U.S. Bankruptcy Court for the District of Maryland, Attorney Stephen Krohn, and the Honorable Joseph P. Manck, former Administrative Judge of the Circuit Court for Anne Arundel County.

"Attorney John Newell testified that he has been an attorney since 1973, specializes in estates and has been a Court Auditor for the Circuit Court for Anne Arundel County since June of 1981. Mr. Newell testified that he has known the Respondent for approximately fourteen years; that he has referred work to the Respondent; that the Respondent's handling of those referred matters was "outstanding" and that Respondent's character and integrity were "without blemish"; that Mr. Newell recruited the Respondent as Counsel to the Anne Arundel County Library Board, that the Respondent gave generously of his time, attended every meeting, and also devoted much time as counsel to the Anne Arundel County Library Foundation. Notwithstanding having read the Stipulation (Petitioner's Exhibit 1), Mr. Newell's opinion of the Respondent has not changed. Mr. Newell was of the opinion that the Respondent has the capacity to do a lot of good for a lot of people in the future, even if he is not practicing law.

"The Honorable James F. Schneider, Judge of the U.S. Bankruptcy Court for the District of Maryland has been a judge for twenty-five years. Judge Schneider testified he knows the Respondent from his bankruptcy practice, and he evaluated the Respondent's competence as being within the top 25% of bankruptcy attorneys appearing before him.

Based on numerous professional contacts with the Respondent, Judge Schneider opined that the Respondent's character and integrity were the "highest" and that his trustworthiness was "paramount." The Judge could not recall any complaint from anyone concerning Respondent's legal work. Notwithstanding having read the Stipulation, Judge Schneider stated that he still trusts the Respondent.

"Attorney Stephen Krohn testified that he has been an attorney for 29 years and is a fellow of the American Academy of Matrimonial Lawyers. Mr. Krohn has known the Respondent for 30 years, and developed a personal friendship with the Respondent approximately 20 years ago. Since knowing the Respondent, Mr. Krohn has referred tax and bankruptcy matters to him, and has never received any complaint concerning the Respondent's legal performance. Mr. Krohn testified that he has never had an occasion to be concerned about Respondent's character or integrity. Having read the Stipulation in this case, Mr. Krohn offered the opinion that while he still has trust in the character and integrity of the Respondent, he believes that some trust needs to be rebuilt. He characterized the Respondent as a good, caring and loving father.

"Also testifying was the Honorable Joseph P. Manck former Administrative Judge of the Circuit Court for Anne Arundel County. Judge Manck has been on the bench since 1989, and he personally knew the Respondent as a child, lost contact, but then became reacquainted with him while both practiced law. As a lawyer, Judge Manck referred clients to the Respondent, and opined that the Respondent's character and integrity were of the highest order. Having read the Stipulation, Judge Manck affirmed the same level of trust in the Respondent and offered the opinion that the Respondent can still be of benefit to the public as an attorney.

2. Stipulation (Exhibit 1)

"What follows are stipulated facts. For convenience in referencing individual transactions, each is abbreviated by the client or date designation in bold type.

"Respondent deposited $30,000.00 in escrow on November 13, 2003, belonging to client, the Bankruptcy Estate of Leonard and Ronnie Cantor. He withdrew the $30,000.00, transferring the funds to his operating account, between November 13 and December 9, 2003 (**Cantor I**). He paid $28,000.00 to the Cantor bankruptcy estate on December 24, 2003, using funds belonging to an unrelated client, Mount Oak, LLC (**Mount Oak I**).

"Funds for client Mount Oak, LLC were received by wire on December 18, 2003. Following that deposit of $104,026.07 in his escrow account, the balance fell to $81,131.20 on December 22, 2003 (**Mount Oak II**). The full amount of the original deposit was wired out on April 19, 2004. · Respondent used funds belonging to an unrelated client, Richard Brien (which was deposited in the escrow account on March 3, 2004), to fund the disbursement to Mount Oak, LLC.

"On January 9, 2004, Respondent deposited $8,000.00 belonging to the Cantor bankruptcy case in escrow. Although he made no disbursement to or on behalf of Cantor, the balance in his escrow account was $2,240.06 on February 5, 2004 (**Cantor II**). He deposited an additional $6,000.00 on February 9, 2004, for a total of $14,000.00. His escrow account balance subsequently fell below $14,000.00 before he made any disbursements to or on behalf of Cantor. When he distributed funds to the Bankruptcy Trustee which was paid to the Cantor creditors, on June 28, 2004, he drew a check for $14,511.71, which exceeded the amount he was supposed to be holding for the client (**Cantor III**).

"Respondent received a wire deposit of $342,702.95 on behalf of client Richard T. Brien in his escrow account to Brien on March 3, 2004. That amount was wired out of the escrow account on April 26, 2004. From March 29th until April 21, 2004, Respondent did not maintain the full amount of Brien's deposit in his escrow account (**Brien**). A deposit of $135,000.00 on April 22nd on behalf of an unrelated client, James Riggleman, gave the account sufficient funds to

permit Respondent to disburse Brien's funds on April 26th (**Riggleman**).

"On April 6, 2004, Respondent deposited $1,500.00 in his escrow account from client Karen Lynn Jenkins. Respondent's escrow account balance was $510.48 on May 10, 2004 (**Jenkins**). Respondent returned $1,500.00 to Jenkins on October 19, 2005 by check number 608 drawn on his escrow account.

"Respondent deposited in his escrow account $1,086.00 belonging to client Tidewater Elevator on April 9, 2004. By May 10, 2004, the balance in his escrow account was $510.48 (Tidewater 1), even though there were no withdrawals related to this client. Respondent had transferred a total of $9,800.00 from his escrow account to his operating account from May 3 to May 10, 2004 (**May 2004**). Between April 9 and July 23, 2004, Respondent deposited a total of $1,517.11 in his escrow account for Tidewater Elevator. There are times when the escrow account balance fell below $1,517.11 (**Tidewater II**) after the last deposit and before Respondent returned the funds to the client on September 2, 2004.

"When Respondent transferred $35,000.00 from his escrow account to his operating account, on April 20, 2004, he used funds held on behalf of clients Richard T. Brien and John McKenna (**McKenna**).

"As of April 26, 2004, Respondent was supposed to be holding $26,863.83 in his escrow account for client John McKenna. By May 10, 2004, after Respondent had transferred $9,800.00 to his own accounts, the balance in the escrow account was $510.48. In August and October 2005, Respondent paid Mr. McKenna using funds belonging to other clients (**August–October 2005**).

"Respondent was supposed to be holding $2,500.00 belonging to Excell Management from May 20, 2004 until April 7, 2005. Respondent failed to maintain that balance in his escrow account (**Excell**). Respondent returned the $2,500.00 to Excell Management by a check dated March 31, 2005, using funds received from an unrelated client, Black Hawk Security, on that date (**Black Hawk**).

"Respondent deposited $30,000.00 in his escrow account on July 6, 2004, for client Allan Percival (**Percival I**).[1] The following day, the balance in Respondent's account was $12,923.28, although he made no disbursements related to Mr. Percival. On September 21 and 22, 2004, he disbursed two checks totaling $30,526.03 to Percival. Respondent had held no other funds on behalf of Percival to account for the additional $526.03 (**Percival II**).

---

1. Respondent testified that loans from family and friends were placed in escrow to replenish client shortages (hereinafter referred to as "**personal loans deposited in escrow**"); that one such loan was in July of 2004 from a friend, Allan Percival, whose $30,000.00 loan was deposited to escrow to cover shortfalls. It therefore appears that the Stipulation mischaracterized this deposit as a client deposit, when in fact it was a personal loan from Allan Percival.

---

"On July 7, 2004, Respondent deposited into the escrow account $25,000.00 belonging to Eastport Analytics (**Eastport I**).[2] The following day, the balance in the account was $12,923.28, although he had not made disbursements related to this client. On July 7th, he transferred a total of $7,300.00 from his escrow account to his operating accounts. By July 31, 2004, the escrow account had a negative balance (**Eastport II**). He paid $25,000.00 to Eastport Analytics on January 3, 2005.

---

2. Despite the Stipulation, Respondent testified that this money was actually a loan from a friend who owned Eastport.

---

"On August 6, 2004, Respondent deposited $13,000.00 in his escrow account belonging to his client, Liberty Metal, Inc.[3] On August 10th, Respondent transferred a portion of the Liberty Metal funds to his operating account. By August 26, 2004, Respondent had a negative balance in his escrow account. Funds belonging to Liberty Metal were disbursed to Horace Davis (August 11, 2004) (**Liberty I**) and J. Riggleman (August 25, 2004) (**Liberty II**) for matters unrelated to Liberty Metal. On December 6, 2004, Respon-

dent paid $13,000.00 to U.S. Treasury for Liberty Metal from funds in his escrow account.

---

3. Respondent testified that a "small part" of monies received from this client were for attorney's fees, but it is unclear whether such fee had been earned.

---

"When Respondent transferred $1,000.00 to his operating account on August 10, 2004, he used funds belonging to Liberty Metal and Tidewater Elevator (**Tidewater III**).

"The transfer of $1,3000.00 from Respondent's escrow account to his operating account [4] used funds he was to be holding for Olmo Brothers (**Olmo**), Allan Percival and Eastport Analytics.

---

4. Which occurred on July 7, 2004 per p. 4 of Petitioner's Exhibit 2.

---

"Respondent deposited in his escrow account $32,000.00 on June 8, 2005 on behalf of client Inez Brown from Carole Schwartz. Two days later, the balance in the escrow account was $13,946.26 (**Brown I**). On June 30, 2005, the balance was $18.46 (**Brown II**). The escrow account had a negative balance on July 14th (**Brown III**). Respondent had not disbursed the funds on behalf of his clients. On September 8, 2005, the $32,000.00 was disbursed to the United States Treasury on behalf of Brown. Respondent used funds belonging to clients Richard Epstein (**Epstein**) and Dennis Hayden (Hayden).

"Respondent transferred $1,000.00 to his operating account on June 30, 2005, leaving a balance of $18.43 in the escrow account when he was supposed to be holding $32,000.00 for Inez Brown (**Brown II**).

"On several occasions, Respondent deposited in his escrow account funds received for rent from other attorneys using space in his office, Douglas Hollmann and Carolyn Krohn (**personal rent**).

"Respondent deposited $20,000.00 in his escrow account on August 18, 2005. Those funds belonged to client, Preci-

sion Signs. On August 31, 2005, Respondent's escrow account balance was $654.69 (**Precision**). There were no disbursements from Respondent's escrow account related to Precision Signs between August 18 and August 31, 2005. Respondent disbursed $20,000.00 to Precision Signs on October 6, 2005, using funds belonging to an unrelated client, Terry Ault (**Ault I**).

"Funds belonging to client Terry Ault in the amount of $55,469.39 were deposited in Respondent's escrow account on October 6, 2005. The balance in Respondent's account fell below that level on October 13, 2005. Terry Ault was paid $55,469.39 on November 15, 2005, partially using funds belonging to Mid–Atlantic Nursing (**Mid Atlantic**). While Respondent was holding the funds for Terry Ault, he transferred a total of $30,200.00 to his own accounts. The transfer of $1,000.00 (**Ault II**) on October 17, 2005 and $1,500.00 on November 9, 2005 (**Ault III**) from Respondent's escrow account to his operating account was a use of Terry Ault's funds.

"In response to Bar Counsel in this matter, Respondent submitted documents which he purported to be ledgers contemporaneously maintained by him documenting his handling of client funds in his escrow account. Respondent later acknowledged to Assistant Bar Counsel on the date of the Peer Review meeting in this matter that he had made several entries after the fact and that it did not accurately reflect his handling of client funds.

"Petitioner's review and analysis of the bank records pertaining to Respondent's escrow account did not establish that any client received less money than they were entitled to receive. No clients have filed complaints alleging that they have not received all the funds to which they were entitled.

## CONCLUSIONS OF LAW

"1.   Safekeeping Property.

"MRPC 1.15 provides that:

*(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.*

"The Court finds by clear and convincing evidence that the Respondent failed to hold clients' property by improperly withdrawing client funds from his escrow account for his own use, for the use of other clients, or for use of a third party in the following transactions: Cantor I, II and III; Mount Oak I and II; Brien; Riggleman; Jenkins; Tidewater I, II and III; May, 2004; McKenna; August–October 2005; Excell; Black Hawk; Percival II; Eastport II; Liberty I and II; Olmo; Brown I, II and III; Epstein; Hayden; Precision; Ault I, II and III; and Mid Atlantic.

*(b) A lawyer may deposit the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account, but only in an amount necessary for the purpose.*

"The Court finds by clear and convincing evidence that the personal loans deposited in escrow, including Percival I and Eastport I, as well as personal rent violate this subsection.

*(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.*

"This record does not support a finding that any of the monies received by the Respondent from his escrow account were for legal fees or expenses. Therefore, the Court cannot conclude by clear and convincing evidence that the Respondent violated this subsection.

*(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.*

"The Court cannot conclude by clear and convincing evidence that any of the prohibitions of this subsection have been violated.

*(e) When in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.*

"There is no clear and convincing evidence that the Respondent ever received property in which two or more persons claimed interest. Therefore, this subsection has not been violated.

"2. Bar Admission and Disciplinary Matters.

"MRPC 8.1 provides that:

*. . . [A] lawyer in connection with . . . a disciplinary matter, shall not:*

*(a) knowingly make a false statement of material fact*
. . . .

"The Court concludes by clear and convincing evidence that the Respondent has violated this Rule by submitting altered ledgers to Assistant Bar Counsel which purported to have been made contemporaneously by Respondent with the transactions in his escrow account, when in fact the ledgers

had been made after the fact and the ledgers did not accurately reflect Respondent's handling of client funds.

"3.  Misconduct.

"MRPC 8.4 provides that:

*It is professional misconduct for a lawyer to:*

*(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;*

"The Petition does not specify the criminal act the Respondent is alleged to have committed.  At oral argument, the Petitioner argued only that this subsection "dove tails" with the Business Article "dealing with misuse of trust money, using money belonging to clients that he had in his escrow account for an unauthorized purpose."

"As set forth in paragraph 6 below, the Respondent did violate the Business Article, but that is not a criminal statute, and therefore a violation is not necessarily a criminal act The misuse of trust money in this case does not, by clear and convincing evidence, meet the statutory elements of theft or embezzlement;  thus, this subsection has not been violated.

*(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;*

"The Court finds by clear and convincing evidence that the Respondent engaged in dishonesty and deceit/misrepresentation by implicitly or explicitly misrepresenting to his clients that their escrow funds would be safeguarded, and that escrow funds disbursed were those being held by the Respondent on their behalf, when in fact they were not.  In addition, the knowing submission of false ledgers violated this subsection.

"The following transactions violated this subsection: Cantor I, II and III; Mount Oak I and II; Brien; Riggleman; Jenkins; Tidewater I, II and III; May, 2004; McKenna; August–October 2005; Excell; Black Hawk; Percival II; Eastport II; Liberty I and II; Olmo; Brown I, II and III;

Epstein; Hayden; Precision; Ault I, II and III; and Mid Atlantic.

"The Court does not find that Respondent's conduct involved fraud.

*(d) engage in conduct that is prejudicial to the administration of justice;*

"Conduct is prejudicial to the administration of justice when it tends to bring the legal profession into disrepute. By clear and convincing evidence, the Court finds that the following transactions violated this subsection: Cantor I, II and III; Mount Oak I and II; Brien; Riggleman; Jenkins; Tidewater I and II; August–October 2005; Excell; Black Hawk; Percival II; Eastport II; Liberty I and II; Tidewater III; Olmo; Brown I, II and III; Epstein; Hayden; Precision; Ault I, II and III; and Mid Atlantic.

"4. Commingling of Funds.

"Rule 16–607 provides:

*a. General Prohibition.*

*An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16–604 or permitted to be so deposited by section b. of this Rule.*

"By clear and convincing evidence the Court finds that the following transactions violated this Rule: Percival I; Eastport I; and personal rent.

"5. Prohibited Transactions.

"Rule 16–609 provides:

*An attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account … or use any funds for any unauthorized purpose.*

"The Court finds by clear and convincing evidence that the following transactions violated this Rule: Cantor I, II and III; Mount Oak I and II; Brien; Riggleman; Jenkins; Tidewater I, II and III; May, 2004; McKenna; August–

October 2005; Excell; Black Hawk; Percival II; Eastport II; Liberty I and II; Olmo; Brown I, II and III; Epstein; Hayden; Precision; Ault I, II and III; and Mid Atlantic.

"6.  Misuse of Trust Money.

"Md.Code Ann., Bus. Occ. & Prof. § 10–306 provides:

*A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.*

"The Court finds by clear and convincing evidence that the following transactions violated this Rule:  Cantor I, II and III; Mount Oak I and II; Brien; Riggleman; Jenkins; Tidewater I, II and III; May, 2004; McKenna; August–October 2005; Excell; Black Hawk; Percival II; Eastport II; Liberty I and II; Olmo; Brown I, II and III; Epstein; Hayden; Precision; Ault I, II and III; and Mid Atlantic.

## MITIGATING FACTORS

"By a preponderance of the evidence, the Court finds the following mitigation in this case relating to Respondent's conduct:

"1.  No client was explicitly misled.

"2.  No client suffered any financial harm.

"3.  All client obligations were timely discharged.

"4.  Respondent never harbored any intent to deprive any client of the timely access to escrow funds.

"5.  Respondent never intended to defraud any client.

"6.  Respondent has enjoyed an excellent reputation in the legal community for honesty, integrity, professional competence, reliability and client satisfaction.

"7.  Throughout his entire legal career, Respondent has volunteered his time and legal skills to many non-profit causes for the betterment of his community, as well as performing *pro bono* work for individual clients.

"8.  Respondent is remorseful.

"9. Respondent has not been the subject of any prior grievance."

(emphasis in original).

## STANDARD OF REVIEW

█ In proceedings involving attorney discipline, this Court has original and complete jurisdiction and conducts an independent review of the record. *Attorney Grievance Comm'n v. Mininsohn,* 380 Md. 536, 564, 846 A.2d 353, 369–70 (2004); *Attorney Grievance Comm'n v. Awuah,* 374 Md. 505, 520, 823 A.2d 651, 660 (2003); *Attorney Grievance Comm'n v. Jaseb,* 364 Md. 464, 475, 773 A.2d 516, 522 (2001). In our review of the record, the hearing judge's findings of fact generally will be accepted unless they are clearly erroneous. Maryland Rule 16–759(b)(2);[9] *Attorney Grievance Comm'n v. Mba-Jonas,* 397 Md. 690, 700, 919 A.2d 669, 675 (2007); *Attorney Grievance Comm'n v. Goff,* 399 Md. 1, 28, 922 A.2d 554, 570 (2007); *Attorney Grievance Comm'n v. Gore,* 380 Md. 455, 468, 845 A.2d 1204, 1211 (2004); *Attorney Grievance Comm'n v. Potter,* 380 Md. 128, 151, 844 A.2d 367, 380–381 (2004). As to the hearing judge's conclusions of law, such as whether provisions of the MRPC were violated, "our consideration is essentially *de novo.*" Maryland Rule 16–759(b)(1);[10] *Attorney Grievance Comm'n v. McLaughlin,* 372 Md. 467, 493, 813 A.2d

---

9. Maryland Rule 16–759(b)(2) provides:
   (2) Findings of fact. (A) If no exceptions are filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.
   (B) If exceptions are filed. If exceptions are filed, the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b). The Court may confine its review to the findings of fact challenged by the exceptions. The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses.

10. Maryland Rule 16–759(b)(1) states:
    (b) **Review by Courts of Appeals.** (1) Conclusions of law. The Court of Appeals shall review de novo the circuit court judge's conclusions of law.

1145, 1160 (2002); *Mininsohn,* 380 Md. at 564, 846 A.2d at 370; *Awuah,* 374 Md. at 520, 823 A.2d at 660.

## DISCUSSION

The hearing judge found violations of MRPC 1.15(a) and (b), 8.1(a), 8.4(c) and (d), Rules 16–607 and 16–609, and Section 10–306 of the Business Occupations and Professions Article. We have reviewed the record and conclude that except for his conclusion that the record does not support adequately a finding that funds Respondent received from Excell Management were for legal fees or expenses, Judge Hughes' findings of fact are supported by clear and convincing evidence. We will discuss our sustaining of this exception below.

A. *Petitioner's Exceptions to Findings of Fact and Conclusions of Law*

Petitioner took exception to Judge Hughes' conclusion that Respondent did not violate MRPC 1.15(c) because "[t]his record does not support a finding that any monies received by the Respondent from his escrow account were for legal fees or expenses," which would include monies paid to Respondent by Karen Lynn Jenkins and Excell Management. Bar Counsel asserts that Respondent's transactions involving Karen Lynn Jenkins and Excell Management violated MRPC 1.15(c) because these clients paid Respondent retainer fees which he subsequently disbursed to finance unrelated matters. Respondent argues in support of the hearing court's finding that the evidence does not establish a MRPC 1.15(c) violation under the clear and convincing evidence standard.

Petitioner's exception requires us to review both a finding of fact and a conclusion of law. As we have indicated, findings of fact made by a hearing judge are ordinarily entitled to deference unless clearly erroneous. In reference to the transactions involving Excell Management, not only did Respondent testify that he was "retained" to represent Excell, but in his ledgers, Respondent listed Excell's initial payment as "Retained" and the disbursement of the account funds on March

28, 2005 as "Refund of retainer." On the basis of Respondent's own testimony and his ledger entries, we are satisfied that the payment accepted from Excell Management was for legal fees paid to retain the Respondent's services. We therefore sustain Bar Counsel's factual exception as to the funds Respondent received from Excell.

The hearing court found that Respondent did withdraw funds from Excell's retainer without having incurred any fees or expenses. In his findings of fact, the hearing judge found that "Respondent was supposed to be holding $2,500.00 belonging to Excell Management from May 20, 2004 until April 7, 2005. Respondent failed to maintain that balance in his escrow account. . . ." Because there is unambiguous evidence that Excell's payments to Respondent represented legal fees, Respondent failed to meet his burden by a preponderance of evidence, and because the hearing court found that these funds had been improperly withdrawn, we sustain Bar Counsel's exception and conclude that Respondent did violate MRPC 1.15(c) with regard to the transactions related to Excell Management.

■ As to Karen Lynn Jenkins, Respondent did testify that he was "retained" to represent her, but the original ledger notations for transactions involving this client do not appear in the record. In the absence of this ledger evidence, we defer to the hearing court's finding and find by clear and convincing evidence that Jenkins' payment was not for legal fees. We therefore overrule Bar Counsel's exception as to the monies Respondent received from Jenkins.

Petitioner also took exception to Judge Hughes' conclusion that Respondent did not violate MRPC 8.4(b) because while "the Respondent did violate the Business Article, . . . that is not a criminal statute, and therefore a violation is not necessarily a criminal act." Petitioner argues that Respondent was found to violate Section 10–306 of the Business Occupations and Professions Article and that pursuant to Section 10–606(b)

of that Article,[11] the willful violation of Section 10–306 is a misdemeanor subject to a fine not exceeding $5,000.00 or imprisonment not exceeding 5 years or both. Respondent does not directly address Section 10–606(b) but rather argues that the Petition for Disciplinary or Remedial Action did not specify the criminal act that would cause him to be found in violation of 8.4(b), a fact of which the hearing court took note. Respondent also stresses that the hearing court found that the misuse of trust money in this case did not constitute theft or embezzlement. Furthermore, Respondent argues that his replenishment of the clients' funds removes his activities from the realm of criminal acts.

Petitioner correctly asserts that a willful violation of Section 10–306 is a misdemeanor under Section 10–606(b), which describes the penalties for willful violations of Subtitle 3, Part I of Title 10 of the Business Occupations and Professions Article. *See Attorney Grievance Comm'n v. Braskey,* 378 Md. 425, 452–53, 836 A.2d 605, 621–22 (2003). In *Braskey,* Judge Raker, writing for this Court, iterated that "[i]n order for a violation of § 10–3–06 . . . to constitute criminal conduct, the conduct must have been 'willful.' " *Id.* at 453, 836 A.2d at 622. Not every violation of Section 10–306 is necessarily willful; willfulness must be found before the misuse of trust money can constitute a criminal act under 8.4(b). *Id.; Attorney Grievance Comm'n v. Gallagher* 371 Md. 673, 711–12, 810 A.2d 996, 1018–19 (2002). In the present case, the hearing judge never specifically found that Respondent's violations of Section 10–306 were willful. In concluding that Respondent violated MRPC 8.4(c), however, the hearing court did find by clear and convincing evidence that Respondent "engaged in

---

**11.** Section 10–606(b) of the Business Occupations and Professions Article, Maryland Code (2000, 2004 Repl.Vol.), provides:

(b) A person who willfully violates any provision of Subtitle 3, Part I of this title, except for the requirement that a lawycr deposit trust moneys in an attorney trust account for charitable purposes under § 10–303 of this title, is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $5,000.00 or imprisonment not exceeding 5 years or both.

dishonesty and deceit/misrepresentation by implicitly or explicitly misrepresenting to his clients that their escrow funds would be safeguarded, and that escrow funds disbursed were those being held by the Respondent on their behalf, when in fact they were not." Judge Hughes then listed a number of transactions which he found violated MRPC 8.4(c), identical to the list of instances which the hearing court found violated Section 10–306. The question before us, then, is whether a finding of "dishonesty and deceit/misrepresentation" is equivalent to a finding of willfulness under Section 10–606(b) and MRPC 8.4(b).

In *Deibler v. State*, 365 Md. 185, 776 A.2d 657 (2001), Judge Wilner, writing for this Court, discussed the numerous meanings which various federal and state courts have attached to the term "willful." He noted that the definition accepted in the majority of applications was that the " 'act be committed voluntarily and intentionally as opposed to one that is committed through inadvertence, accident, or ordinary negligence.' " *Id.* at 193, 776 A.2d at 661, quoting S. Brogan, *An Analysis of the Term "Willful" in Federal Criminal Statutes*, 51 Notre Dame Lawyer 786 (1976). In *Attorney Grievance Comm'n v. Tayback*, 378 Md. 578, 837 A.2d 158 (2003), we reviewed the meaning of "willful" more specifically in the attorney grievance context, with regard to the willful failure to file tax returns, a criminal act under Maryland and federal law, which formed the basis for the hearing court's finding that the respondent in that case violated MRPC 8.4(b). In *Tayback*, Judge Cathell, writing for this Court, after reviewing Judge Wilner's discussion of "willful" in *Deibler*, iterated that "[i]n attorney grievance matters based on the willful failure to file tax returns, this Court has consistently defined willfulness as the ' "voluntary, intentional violation of a known legal duty not requiring a deceitful or fraudulent motive." ' " *Id.* at 589, 837 A.2d at 165, quoting *Attorney Grievance Comm'n v. Thompson*, 376 Md. 500, 514 n. 6, 830 A.2d 474, 482 n. 6 (2003); *Attorney Grievance Comm'n v. Boyd*, 333 Md. 298, 309, 635 A.2d 382, 387 (1994); *Attorney Grievance Comm'n v. Walman*, 280 Md. 453, 460, 374 A.2d 354, 359 (1977).

*Black's Law Dictionary* defines "deceit" as "1. The act of intentionally giving a false impression.... 2. A false statement of fact made by a person knowingly or recklessly ... with the intent that someone else will act upon it." *Black's Law Dictionary* 435 (8th ed.2004). Similarly, the Maryland Civil Pattern Jury Instruction Civil 11:1 (2007), Fraud or Deceit, in pertinent part, states:

> To recover damages for deceit, it must be shown that:
>
> (1) the defendant made a *false representation* of a material fact;
>
> (2) the defendant *knew of its falsity* or made it with such reckless indifference to the truth that it would be reasonable to charge the defendant with knowledge of its falsity;
>
> (3) the defendant *intended* that the plaintiff would act in reliance on such statements....

(emphasis added). *See also Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 333, 439 A.2d 534, 537 (1982) (elements of deceit include purposeful making of a false statement and knowledge of falsity or misrepresentation made "with such a reckless indifference to truth as to be equivalent to actual knowledge"). We have also held that "[i]n Maryland, a finding of deceit and misrepresentation in a disciplinary action must be found to be intentional." *Attorney Grievance Comm'n v. Mooney*, 359 Md. 56, 78, 753 A.2d 17, 29 (2000); *Attorney Grievance Comm'n v. Clements*, 319 Md. 289, 298, 572 A.2d 174, 179 (1990).

As a result, in finding that many of Respondent's escrow transactions violated MRPC 8.4(c), the hearing judge thereby determined that these movements of client funds were intentional. In the facts specific to this case, the hearing judge found "deceit/misrepresentation" with reference to Respondent's misrepresentation to his clients that their escrow funds would be safeguarded and disbursed only on their behalf, when they were not, and listed as violating 8.4(c) the same transactions that he found in violation of Section 10–306. We therefore find that Judge Hughes' finding of "deceit/misrepresentation" is equivalent to a finding of willfulness to support a

violation of Section 10–606(b) and thereby a violation of MRPC 8.4(b), and we, therefore, sustain Bar Counsel's exception.

### B. *Conclusions of Law*

The hearing judge determined that Respondent acted in violation of MRPC 1.15(a), Maryland Rule 16–609, and Section 10–306 of the Business Occupations and Professions Article of the Maryland Code when he commingled personal and clients funds and improperly withdrew client funds from his escrow account for his own personal use, for the use of another client, or for the use of a third party.

MRPC 1.15(a) states:

> (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

Maryland Rule 16–609 provides:

> An attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer.

Section 10–306 provides:

> A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.

The hearing court determined that Respondent violated MRPC 1.15(a), Maryland Rule 16–609, and Section 10–

306 in thirty-one transactions beginning on November 13, 2003, and continuing through November 15, 2005. The hearing judge abbreviated these movements of funds as Cantor I, II and III; Mount Oak I and II; Brien; Riggleman; Jenkins; Tidewater I, II and III; May, 2004; McKenna; August–October 2005; Excell; Black Hawk; Percival II; Eastport II; Liberty I and II; Olmo; Brown I, II and III; Epstein; Hayden; Precision; Ault I, II and III; and Mid Atlantic. Through these transactions, Respondent wrote checks from his escrow account and deposited the funds into his operating account in order to cover personal expenses. When it came time for Respondent to disburse funds from the escrow account to proper payees, he would "borrow" funds from other clients, from personal loans improperly deposited into the escrow account, or from rents received for office space in the building housing his law office.

Such activities clearly constitute improper commingling of personal funds and client funds in violation of MRPC 1.15(a). *See Mba–Jonas,* 397 Md. at 700, 919 A.2d at 675; *Attorney Grievance Comm'n v. Snyder,* 368 Md. 242, 260–61, 793 A.2d 515, 525–526 (2002). Respondent's intentional misuse of trust money for purposes other than those for which it was entrusted to him also violate Rule 16–609 and Section 10–306. *See Mba–Jonas,* 397 Md. at 700, 919 A.2d at 675.

■ The hearing judge also concluded that Respondent violated MRPC 1.15(b) and Maryland Rule 16–607 by depositing personal loans and rents into his escrow account.

Rule 1.15(b) states:

(b) A lawyer may deposit the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account, but only in an amount necessary for the purpose.

Maryland Rule 16–607 provides in relevant part:

(a) **General prohibition.** An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16–604 or permitted to be so deposited by section b. of this Rule.

(b) **Exceptions.** 1. An attorney or law firm shall either
(A) deposit into an attorney trust account funds to pay
any fees, service charges, or minimum balance required
by the financial institution to open or maintain the ac-
count, including those fees that cannot be charged against
interest due to the Maryland Legal Services Corporation
Fund pursuant to Rule 16–610 b 1(D), or (B) enter into an
agreement with the financial institution to have any fees
or charges deducted from an operating account main-
tained by the attorney or law firm. The attorney or law
firm may deposit into an attorney trust account any funds
expected to be advanced on behalf of a client and expect-
ed to be reimbursed to the attorney by the client.

In his Stipulation, Respondent characterized the $30,000.00
provided by Allan Percival and deposited into Respondent's
escrow account on July 6, 2004, and the July 7, 2004 deposit of
$25,000.00 from Eastport Analytics, as client deposits. Re-
spondent, however, later testified that these were actually
personal loans from Percival and the owner of Eastport Ana-
lytics. There is no finding and nothing in the record that
reflects that Respondent's depositing of these personal loans
or the rents obtained from the tenants of his office building,
also deposited into the escrow account, was done solely for the
purpose of paying bank service charges on the client trust
account within the meaning of MRPC 1.15(b). Accordingly,
the transactions which the hearing court abbreviated as Perci-
val I and Eastport I, as well as the client rent transactions,
violated MRPC 1.15(b). *See Attorney Grievance Comm'n v.
Obi*, 393 Md. 643, 656 n. 8, 904 A.2d 422, 430 n. 8 (2006).
Likewise, as these personal loans and rents were not required
to be deposited into Respondent's attorney trust account
under Rule 16–604,[12] nor were they deposited to cover bank

---

12. Maryland Rule 16–604 states:

Except as otherwise permitted by rule or other law, all funds, includ-
ing cash, received and accepted by an attorney or law firm in this
State from a client or third person to be delivered in whole or in part
to a client or third person, unless received as payment of fees owed
the attorney by the client or in reimbursement for expenses properly

fees as is allowable under Rule 16–607(b), these transactions clearly violated Rule 16–607. *See Snyder,* 368 Md. at 260–61, 793 A.2d at 525–26 (violation of Rule BU7, the precursor to Rule 16–607).

■ The hearing court also found that Respondent violated MRPC 8.1(a) by submitting altered ledgers to Assistant Bar Counsel which purported to have been made contemporaneously with the transactions in the escrow account but which were actually made after the fact and did not accurately reflect Respondent's handling of client funds.

MRPC 8.1(a) states:

> An applicant for admission or reinstatement to the bar, or a lawyer in connection with a disciplinary matter, shall not: (a) knowingly make a false statement of material fact....

Respondent's knowing misrepresentation of the legitimacy of his ledger entries to Bar Counsel certainly violated MRPC 8.1(a) as the timing of the entries was a fact material to Counsel's investigation of Respondent's misconduct. *See Attorney Grievance Comm'n v. Kapoor,* 391 Md. 505, 532, 894 A.2d 502, 518 (2006).

■ The hearing judge found that MRPC 8.4(c) was violated by Respondent's misappropriation of client funds and his misrepresentation to clients that their escrow funds would be safeguarded when they were not. The hearing court found violations in the thirty-one transactions which it abbreviated as Cantor I, II and III; Mount Oak I and II; Brien; Riggleman; Jenkins; Tidewater I, II and III; May, 2004; McKenna; August–October 2005; Excell; Black Hawk; Percival II; Eastport II; Liberty I and II; Olmo; Brown I, II and III; Epstein; Hayden; Precision; Ault I, II and III; and Mid Atlantic.

---

advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution. This Rule does not apply to an instrument received by an attorney or law firm that is made payable solely to a client or third person and is transmitted directly to the client or third person.

MRPC 8.4(c) states that is professional misconduct for a lawyer to:

    (c) engage iri conduct involving dishonesty, fraud, deceit or misrepresentation. . . .

This Court has consistently found that an attorney's misappropriation of client funds violates MRPC 8.4(c). *See Attorney Grievance Comm'n v. Cherry–Mahoi*, 388 Md. 124, 159, 879 A.2d 58, 80 (2005); *Snyder*, 368 Md. at 260, 793 A.2d at 525–26; *Attorney Grievance Comm'n v, Vanderlinde*, 364 Md. 376, 385–86, 773 A.2d 463, 468–69 (2001). In the present case, we agree with the hearing judge that Respondent's conduct was dishonest and deceitful in violation of Rule 8.4(c) in that he misappropriated client funds and misrepresented to clients that the funds were properly safeguarded.

This Court has also found misappropriation of client funds to be "prejudicial to the administration of justice" in violation of MRPC 8.4(d). *See Cherry–Mahoi*, 388 Md. at 159, 879 A.2d at 80; *Attorney Grievance Comm'n v. Zuckerman*, 386 Md. 341, 374, 872 A.2d 693, 713 (2005); *Gallagher*, 371 Md. at 713, 810 A.2d at 1020. The hearing judge found that MRPC 8.4(d) was violated by Respondent's misuse of client funds in the twenty-nine transactions which it abbreviated as Cantor I, II and III; Mount Oak I and II; Brien; Riggleman; Jenkins; Tidewater I and II; August–October 2005; Excell; Black Hawk; Percival II; Eastport II; Liberty I and II; Tidewater III; Olmo; Brown I, II and III; Epstein; Hayden; Precision; Ault I, II and III; and Mid Atlantic. Respondent's misconduct was harmful to the legal profession because it undermined the public's confidence that attorneys will properly maintain entrusted funds as expected and required under the Rules of Professional Conduct. *See Cherry–Mahoi*, 388 Md. at 160, 879 A.2d at 80. Accordingly, we hold that Respondent violated MRPC 8.4(d) by engaging in behavior that was prejudicial to the administration of justice.

### SANCTION

        The appropriate sanction for a violation of the Rules of Professional Conduct generally "depends on the facts

and circumstances of each case, including consideration of any mitigating factors," *Zuckerman,* 386 Md. at 375, 872 A.2d at 713, in furtherance of the purposes of attorney discipline: " 'to protect the public, to deter other lawyers from engaging in violations of the Maryland Rules of Professional Conduct, and to maintain the integrity of the legal profession.' " *Id.,* quoting *Awuah,* 374 Md. at 526, 823 A.2d at 663. In *Attorney Grievance Comm'n v. Sheridan,* 357 Md. 1, 741 A.2d 1143 (1999), we said:

> Because "an attorney's character *must remain beyond reproach* " this "Court has the duty, since attorneys are its officers, to insist upon the *maintenance* of the integrity of the bar and to prevent the transgressions of an individual lawyer from bringing its image into disrepute. Disciplinary proceedings have been established for this purpose, not for punishment, but rather as a catharsis for the profession and a prophylactic for the public."

*Id.* at 27, 741 A.2d at 1157, quoting *Attorney Grievance Comm'n v. Deutsch,* 294 Md. 353, 368–69, 450 A.2d 1265, 1273 (1982) (emphasis in original). When imposing sanctions, we have enunciated that, "[t]he public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed." *Gore,* 380 Md. at 472, 845 A.2d at 1213. Therefore, in this case we consider the nature of the ethical duty violated in light of any aggravating or mitigating circumstances. *Attorney Grievance Comm'n v. Sweitzer,* 395 Md. 586, 598–99, 911 A.2d 440, 447–48 (2006).

Petitioner has recommended a sanction of disbarment, while Respondent argues that he should be given an indefinite suspension. Respondent urges us to consider the nine mitigating factors found by the hearing judge and also argues that his case is similar to other attorney grievance matters involving the misappropriation of client funds in which indefinite suspensions were meted out. It is the Respondent's repeated violations of MRPC 8.4, however, that compels this Court to agree with Bar Counsel that disbarment is the appropriate sanction.

■ Respondent violated MRPC 8.4(b), (c), and (d) when he misrepresented to his clients that their escrow funds would be safeguarded while, in fact, he was improperly using client money to cover his own business expenses, and then later covering these withdrawals with funds from other clients. We have repeatedly stated that the misappropriation of entrusted funds "is an act infected with deceit and dishonesty, and, in the absence of compelling extenuating circumstances justifying a lesser sanction, will result in disbarment." *Cherry–Mahoi,* 388 Md. at 161, 879 A.2d at 81. *Accord Attorney Grievance Comm'n v. Prichard,* 386 Md. 238, 248, 872 A.2d 81, 86 (2005); *Attorney Grievance Comm'n v. James,* 385 Md. 637, 666, 870 A.2d 229, 246 (2005); *Attorney Grievance Comm'n v. Sperling,* 380 Md. 180, 191, 844 A.2d 397, 404 (2004); *Attorney Grievance Comm'n v. Somerville,* 379 Md. 586, 593, 842 A.2d 811, 815 (2004); *Attorney Grievance Comm'n v. Smith,* 376 Md. 202, 238, 829 A.2d 567, 588–89 (2003); *Attorney Grievance Comm'n v. Spery,* 371 Md. 560, 568, 810 A.2d 487, 491–92 (2002); *Vanderlinde,* 364 Md. at 397, 406, 773 A.2d at 475, 480. Such a sanction is warranted because attorneys

> must remember that the entrustment to them of the money and property of others involves a responsibility of the highest order. They must carefully administer and account for those funds. Appropriating any part of those funds to their own use and benefit without clear authority to do so cannot be tolerated.

*Attorney Grievance Comm'n v. Owrutsky,* 322 Md. 334, 345, 587 A.2d 511, 516 (1991).

Respondent asks us to consider as mitigating factors that no client was explicitly misled or suffered any financial harm, that all client obligations were timely discharged, and that Respondent never intended to deprive any client of the timely access to escrow funds or to defraud any client. Regardless, Respondent's actions were dishonest, deceitful, and motivated by his own pecuniary interests. Honesty and integrity are required from all attorneys, because actions in denigration of those values reduce public confidence:

[A] lawyer's act of dishonesty, fraud, or deceit might cause the public to lose confidence in other lawyers and the judicial system as a whole.

\* \* \*

[C]andor by a lawyer, in any capacity, is one of the most important character traits of a member of the Bar.

\* \* \*

The very integrity of the judicial system demands that the attorneys who practice in this state, who represent clients in the courts, and who interact in judicial matters with the courts do so with absolute honesty and personal integrity.

*Attorney Grievance Comm'n v. White,* 354 Md. 346, 364, 367, 731 A.2d 447, 457, 459 (1999). Similarly, as we stated in *Vanderlinde:*

Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse.

364 Md. at 418, 773 A.2d at 488. *See also Attorney Grievance Comm'n v. Pennington,* 387 Md. 565, 596, 876 A.2d 642, 660 (2005) (noting the " 'unparalleled importance of honesty in the practice of law' "), quoting *Attorney Grievance Comm'n v. Angst,* 369 Md. 404, 420, 800 A.2d 747, 757 (2002); *Attorney Grievance Comm'n v. Blum,* 373 Md. 275, 304, 818 A.2d 219, 237 (2003) ("Honesty is of paramount importance in the practice of law.").

Respondent, nevertheless, remonstrates that not all cases involving a finding of the misuse of client funds have resulted in disbarment and urges us to find that the circumstances of the present case warrant a sanction of indefinite suspension rather than disbarment. He cites to a number of cases where a sanction less than disbarment was ordered in a misappropriation case to support his own request for leniency: *Goff,* 399

Md. at 1, 922 A.2d at 554; *Attorney Grievance Comm'n v. Rees*, 396 Md. 248, 913 A.2d 68 (2006); *Attorney Grievance Comm'n v. Calhoun*, 391 Md. 532, 894 A.2d 518 (2006); *Attorney Grievance Comm'n v. Whitehead*, 390 Md. 663, 890 A.2d 751 (2006); *Attorney Grievance Comm'n v. Maignan*, 390 Md. 287, 888 A.2d 344 (2005); *Zuckerman*, 386 Md. at 341, 872 A.2d at 693; *Attorney Grievance Comm'n v. Rose*, 383 Md. 385, 859 A.2d 659 (2004); *Attorney Grievance Comm'n v. DiCicco*, 369 Md. 662, 802 A.2d 1014 (2002); *Attorney Grievance Comm'n v. Hayes*, 367 Md. 504, 789 A.2d 119(2002).

In every case cited, except *Calhoun*, however, the hearing judge did not find a violation of MRPC 8.4(c). *Goff*, 399 Md. at 16, 922 A.2d at 563 (hearing court declined to find violation of MRPC 8.4(c)); *Rees*, 396 Md. at 251 n. 7, 913 A.2d at 69 n. 7 (hearing court found allegation that Rees violated MRPC 8.4(c) to be "frivolous"); *Whitehead*, 390 Md. at 669, 890 A.2d at 755 (reciprocal discipline case in which District of Columbia Court of Appeals did not specifically find violation of the equivalent of MRPC 8.4(c)); *Maignan*, 390 Md. at 292, 888 A.2d at 347 (hearing court declined to find violation of MRPC 8.4(c)); *Zuckerman*, 386 Md. at 360, 872 A.2d at 704–05 (attorney was not charged with a violation of 8.4(c)); *Rose*, 383 Md. at 391, 859 A.2d at 662 (same); *DiCicco*, 369 Md. at 666, 684, 802 A.2d at 1016, 1026 (hearing court declined to find violation of MRPC 8.4(c); Bar Counsel excepted to the finding and this Court overruled the exception, holding that the evidence showed the respondent to be negligent, not "willful or deceitful"); *Hayes*, 367 Md. at 511, 789 A.2d at 123–24 (respondent was not charged with a violation of MRPC 8.4(c)).

In the singular case in which a violation of 8.4(c) was found and disbarment was not ordered, *Calhoun*, 391 Md. at 532, 894 A.2d at 518, the respondent was charged with violating multiple rules of professional conduct, including 8.4(c), in connection with her representation of a client in a sexual harassment suit. The hearing court found that Calhoun had commingled trust funds and personal funds by failing to deposit two $5,000.00 payments for fees and an $8,000.00 settlement check into a properly designated attorney trust account. The hearing

judge found that Calhoun had misled her client concerning legal fees and costs owed by failing to keep him informed of the accrual of those fees and costs in a timely fashion, as was required by her representation agreement. Specifically, the court found that she "mislead by silence and lack of communication," *id.* at 548, 894 A.2d at 527, and that she violated 8.4(c) by her "failure to communicate properly." *Id.* at 552, 894 A.2d at 530. In determining Calhoun's sanction, this Court noted that "while the hearing judge did find that respondent violated MRPC 8.4(c), he did not find specifically that respondent engaged in dishonest or fraudulent conduct," *Id.* at 571, 894 A.2d at 541, and focused on the respondent's treatment of the $8,000.00 in settlement funds. We noted that the hearing court did not find that Calhoun had intentionally misappropriated the settlement funds, but rather that the facts indicated that she may have believed, albeit erroneously, that the settlement funds were owed to her to cover fees and costs associated with representation. *Id.* at 574, 894 A.2d at 543.

The facts of the present case are different from those of *Calhoun* in two very important respects. First, in the present case the hearing court found by clear and convincing evidence that Respondent "engaged in dishonesty and deceit/misrepresentation." Second, there are no factual findings in the present case to support the premise that client funds were unintentionally or accidentally misappropriated. In *Calhoun,* the attorney had properly incurred fees and costs associated with the representation of her client; her violation of MRPC 8.4(c) was a result of her lack of diligence in communicating these expenses to her client and following appropriate procedures in obtaining payment. The violations in the present case do not result from the Respondent improperly utilizing client funds which he believed he had earned for services rendered; rather, he *knowingly* and *intentionally* misused client funds over a period of two years in order to cover personal expenses unrelated to his representation of those clients.[13]

---

**13.** Lastly, we would like to note that while Respondent asks us to consider as mitigating factors his "reputation for honesty [and] integri-

It should also be noted that we have declined to order disbarment in cases where the misappropriation of funds was due to negligence, rather than intentional misconduct. *See Zuckerman,* 386 Md. at 379, 872 A.2d at 716; *Sheridan,* 357 Md. at 36, 741 A.2d at 1162; *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 491, 671 A.2d 463, 484 (1996). *See also Attorney Grievance Comm'n v. Cafferty,* 376 Md. 700, 728, 831 A.2d 1042, 1059 (2003) (stating that disbarment is not appropriate where the violation is the result of negligence, not intentional acts). In such circumstances, we have concluded that indefinite suspension was the appropriate sanction. For example, in *Zuckerman,* we imposed an indefinite suspension with the right to reapply after ninety days because the misappropriation of client funds was the result of ineffectual accounting procedures and theft by the attorney's employee, rather than the intentional actions of Zuckerman himself. 386 Md. at 379, 872 A.2d at 716. In the case *sub judice,* however, indefinite suspension is not the appropriate sanction as Respondent's actions were intentional, not negligent.

Given the Respondent's willful and intentional misappropriation of client funds over a period of two years, we are persuaded that the public only would be protected by the imposition of a sanction of disbarment. We shall so order.

***IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT***

---

ty" and his "remorse," his own testimony at the April 26, 2007 hearing before Judge Hughes calls these factors into doubt. When asked to describe the measures he had taken to ensure that future violations would not occur he replied:

I've done at least three different—made three different changes in my practice. The first was that I have stopped taking Chapter 11 cases or I have been more selective so that I can better manage my funds. I had a paralegal who assisted me and she was earning $35,000.00 per year plus additional expenses and I let her go, I laid her off. And in addition I have started—because of an additional line of credit that I was able to procure from Bank of America I have been able to manage my funds a little bit more easily and in fact to avoid using the escrow *except wherever possible* . . . .

(Emphasis added).

*TO MARYLAND RULE 16–761, FOR WHICH SUM JUDG-MENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION.*