955 A.2d 755

## ATTORNEY GRIEVANCE COMMISSION

v.

### Michael F. TAYLOR.

**Misc. Docket AG No. 14, Sept. Term, 2007.**

Court of Appeals of Maryland.

Sept. 4, 2008.

700

Dolores O. Ridgell, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Com'n of Maryland), for petitioner.

Francis J. Ford, Bethesda, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, JOHN C. ELDRIDGE, (Retired, specially assigned) and IRMA S. RAKER, (Retired, specially assigned), JJ.

RAKER, J.

The Attorney Grievance Commission of Maryland filed a petition with this Court for disciplinary action against Michael F. Taylor, alleging violations of the Maryland Rules of Professional Conduct. The Commission charged respondent with violating (1) Md. Rule 16–607 Commingling of Funds,[1] as well

---

1. Maryland Rule 16–607 provides as follows:
 "a. General prohibition. An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16–604 or permitted to be so deposited by section b. of this Rule.
 b. Exceptions. 1. An attorney or law firm shall either (A) deposit into an attorney trust account funds to pay any fees, service charges, or minimum balance required by the financial institution to open or maintain the account, including those fees that cannot be charged against interest due to the Maryland Legal Services Corporation Fund pursuant to Rule 16–610b1(D), or (B) enter into an agreement with the financial institution to have any fees or charges deducted

as the following Maryland Lawyers' Rules of Professional Conduct: (2) Rule 1.15 Safekeeping Property,[2] (3) Rule 8.1

from an operating account maintained by the attorney or law firm. The attorney or law firm may deposit into an attorney trust account any funds expected to be advanced on behalf of a client and expected to be reimbursed to the attorney by the client.

2. An attorney or law firm may deposit into an attorney trust account funds belonging in part to a client and in part presently or potentially to the attorney or law firm. The portion belonging to the attorney or law firm shall be withdrawn promptly when the attorney or law firm becomes entitled to the funds, but any portion disputed by the client shall remain in the account until the dispute is resolved.

3. Funds of a client or beneficial owner may be pooled and commingled in an attorney trust account with funds held for other clients or beneficial owners."

2. The version of Rule 1.15 in effect at the time the violation occurred read as follows:

"(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) A lawyer may deposit the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account, but only in an amount necessary for the purpose.

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(e) When in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which interests are not in dispute."

Bar Admission and Disciplinary Matters,[3] (4) Rule 8.4 Misconduct,[4] (5) Rule 1.3 Diligence,[5] (6) Rule 1.4 Communication,[6] (7)

3. Rule 8.1 provides as follows:

"An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
(a) knowingly make a false statement of material fact; or
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6."

4. Rule 8.4 provides as follows:

"It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice;
(e) knowingly manifest by words or conduct when acting in a professional capacity bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status when such action is prejudicial to the administration of justice, provided, however, that legitimate advocacy is not a violation of this paragraph;
(f) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Maryland Lawyers' Rules of Professional Conduct or other law; or
(g) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law."

5. Rule 1.3 provides as follows:

"A lawyer shall act with reasonable diligence and promptness in representing a client."

6. Rule 1.4 provides as follows:

"(a) A lawyer shall:
(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
(2) keep the client reasonably informed about the status of the matter;
(3) promptly comply with reasonable requests for information; and

Rule 1.5 Fees,[7] (8) Rule 3.2 Expediting Litigation,[8] and (9)

(4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

7. Rule 1.5 provides as follows:

"(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

(b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.

(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be responsible whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the

## Rule 3.4 Fairness to Opposing Party and Counsel.[9] Pursuant

matter, and, if there is a recovery, showing the remittance to the client and the method of its determination.

(d) A lawyer shall not enter into an arrangement for, charge, or collect:

(1) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or custody of a child or upon the amount of alimony or support or property settlement, or upon the amount of an award pursuant to Md.Code, Family Law Article, §§ 8–201 through 213; or

(2) a contingent fee for representing a defendant in a criminal case.

(e) A division of a fee between lawyers who are not in the same firm may be made only if:

(1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;

(2) the client agrees to the joint representation and the agreement is confirmed in writing; and

(3) the total fee is reasonable."

**8.** Rule 3.2 provides as follows:

"A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

**9.** Rule 3.4 provides as follows:

"A lawyer shall not:

(a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;

(b) falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law;

(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;

(d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party;

(e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused; or

(f) request a person other than a client to refrain from voluntarily giving relevant information to another party unless:

(1) the person is a relative or an employee or other agent of a client; and

(2) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information."

to Maryland Rule 16–752(a), we referred the matter to Judge Sheila R. Tillerson Adams of the Circuit Court for Prince George's County to make findings of fact and proposed conclusions of law. Judge Adams held an evidentiary hearing and concluded that the Commission had not produced sufficient evidence for the court to find that the respondent had violated the statute or the Rules of Professional Conduct.

I.

Judge Adams made the following findings of fact and conclusions of law:

## "FINDINGS OF FACT

### I. *Trust Account Over Draft*

Michael F. Taylor (hereinafter referred to as the respondent) is a member of the Maryland Bar and was admitted to practice in June of 2001. The respondent is not licensed to practice law in any other jurisdiction. Respondent worked as legal counsel to the Maryland Department of Labor, Licensing and Regulation (DLLR) from his admission to the Bar in 2001 until July 7, 2005. During that period respondent maintained a very limited private practice out of his home.

On January 4, 2006, Bar Counsel received a report of an overdraft on respondent's attorney trust account. After an investigation, Bar Counsel determined that the respondent had violated the following rules of The Maryland Lawyers' Rules of Professional Conduct: [10]

Rule 1.15 Safekeeping Property

Rule 8.1 Bar Admission and Disciplinary Matter

Rule 8.4 Misconduct

That during the period of August 1, 2005 through March 31, 2006 the respondent maintained an attorney trust ac-

---

**10.** The hearing judge included the Maryland Rules of Professional Conduct as endnotes, which we have omitted.

count at Bank of America. That said account was the only attorney trust account that the respondent had ever obtained for his practice. That he opened the account in anticipation of a settlement in one of the few cases that he handled in his private practice. The settlement was finalized and the funds were properly disbursed through the trust account. The disbursements of the funds from the settlement are not at issue. Subsequent to the disbursement of the funds, the trust account remained open. No other client funds were ever deposited in that account. However, the respondent deposited minimal funds in that account from time to time to pay the on going maintenance fees that were automatically debited from that account on a monthly basis.

On or about December 27, 2005 the respondent paid his office phone bill from the trust account in question and at that time there were insufficient funds in the account to cover the transaction. The transaction was covered by a subsequent deposit from the respondent in to the trust account. The trust account was closed March 2006. Upon receiving the January 4, 2006 notification from Bank of America, Bar Counsel sent letters to the respondent on January 10, 2006, February 21, 2006, March 16, 2006 and April 4, 2006 requesting a written response to the overdrafts in the trust account. The respondent did not send a written response to Bar Counsel's inquiry until April 11, 2006. Bar Counsel responded promptly with letters on April 17, 2006 and May 3, 2006. The respondent finally sent a detailed explanation to Bar Counsel on May 20, 2006.

It is clear from the information submitted by the respondent that there were no commingling of client funds or use or misuse of client funds. In fact, there were no client funds deposited in the trust account case when the account overdrafted. At issue here, is the proper management and utilization of an attorney trust account, the events that led the account to overdraft and the timeliness of the response by the respondent. The respondent set forth the following explanation found in letter and deposition testimony lifted in

its entirety from the report of Jeffery S. Janofsky, M.D., designated as an expert by Bar Counsel during the hearing:

In a May 2006 letter to the Attorney Grievance Commission Mr. Taylor explained in late 2005: my motivation to discontinue the practice of law was due to my rapidly declining mental health. I had survived a stroke (in October, 2004) which had resulted in some initial loss of (i) short and long-term memory and cognitive functions (ii) physical mobility, and (iii) emotional stability. By late 2005, I had regained much of my pre-stroke physical and mental acuities through medical treatment, medicines and physical therapy. However by late 2005 I discovered that I could not represent clients to the best of my ability due to my impaired mental acumen and emotional state ... unbeknownst to me at the time, and for sometime thereafter and earlier events signaled my descent into depression and related psychosocial disorder which significantly altered my behavioral patterns and outlook. Earlier in June, 2005, I was summarily dismissed from employment as an attorney with the state due to my health conditions....

As a result of my depression, I became withdrawn, touchy, lacking in motivation, dispirited, and bereft of my usual strong sense of responsibility. My normal sense of responsiveness to obligations, duties and requirements waned as I became indifferent and disconnected from life's daily responsibilities. On some level, I believed that I deserved the bad things that happened to me (e.g. stroke, job termination, poor court performance, diabetes, hypertension, and other ailment, etc.) because I did some unknown thing to cause them to happen.

I remained in the midst of this depressive state through early May, 2006 of this year coming to terms with my the (sic) discovery of my condition only after a dramatic change in my physical, mental and emotional health as a result of an adjustment in my daily regimen of medicines prescribed by my new physician. With my mind clear, I began to question my recent conduct, especially my tardi-

ness in responding to the Commission's request. What then became clear is that I was seeking to be punished for my perceived failures....

In his October 31, 2007 deposition, Mr. Taylor described similar difficulties.

Mr. Taylor attributed his initial failures to respond to the Attorney Grievance Commission to fear that he could not remember the details of the incidents, "I could not remember all the stuff. I could not remember the details." In retrospect, Mr. Taylor felt he was depressed and therefore did not respond.

During this two-day hearing, the Court heard from Jeffrey S. Janofsky, M.D. and Dr. Henry, the respondent's primary care physician. Although Dr. Janofsky clearly indicated that Mr. Taylor had never been clinically diagnosed with depression, on cross examination he conceded that one could be depressed from all of the mental and medical stresses that the respondent was facing at that time in his life. Dr. Henry advised the court that he clearly felt that the respondent was depressed and recommended that he see a psychologist as late as September of 2007. The respondent further testified that during that period in his life he just let everything pile up. In fact, the respondent testified that he did not even open his mail. The respondent further testified that due to his depressed state of mind at that period in his life he could not have effectively responded any sooner than he did to Bar Counsel's request.

## II. *Jerry J. Mathis Representation*

On or about May 2, 2006, the respondent was notified by Bar Counsel of the complaint filed by Jerry J. Mathis (hereinafter referred to as Mr. Mathis). Bar Counsel contended that the respondent violated the following Maryland Lawyers' Rules of Professional Conduct:

1) Rule 1.3 Diligence
2) Rule 1.4 Communication
3) Rule 1.5 Fees

4) Rule 3.2 Expediting Litigation
5) Rule 3.4 Fairness to Opposing Party and Counsel
6) Rule 8.1 Bar Admission and Disciplinary Matters
7) Rule 8.4 Misconduct

Mr. Mathis and the respondent had been acquaintances for more than 10 years. They lived in the same community and attended the same church. Conversations in those circles is what precipitated this representation. In May of 2003, the respondent began to provide legal representation to Mr. Mathis concerning a dispute with a business associate (hereinafter referred to as Mr. Hargrove). No fees for service were paid by Mr. Mathis at this point. The respondent surmised that this matter could be negotiated short of litigation based on the facts as he knew at the time. Respondent met with Mr. Mathis and developed a strategy for the case, which was memorialized in a letter to opposing counsel. Among other things, the respondent and Mr. Mathis agreed that Mr. Mathis would put all of Mr. Hargrove's commissions in an interest bearing account and to provide a regular accounting of the funds. A copy of the letter and the retainer agreement were hand delivered to Mr. Mathis on May 24, 2003. Although Mr. Mathis agreed to handle the funds as instructed, Mr. Mathis never put the funds in an interest bearing account despite the fact that Mr. Hargrove's attorney routinely forwarded the commission checks to Mr. Mathis through the respondent.

After ignoring repeated request to provide an accounting, in August of 2003, Mr. Hargrove filed suit against Mr. Mathis in the Circuit Court for Prince George's County Maryland (*Hargrove v. Mathis et al.* CAL 03–15930). Mr. Mathis did not tell the respondent about the case until September of 2003. By that time a Motion for Default was pending. The respondent filed the appropriate pleadings. The Default was denied and an answer and counterclaim were filed. In September of 2003, Mr. Mathis finally signed the retainer agreement and paid the respondent $2,000.00. Prior to the September payment no other fee had been tendered to the respondent for services.

Between the months of September 2003 to March of 2004 the respondent did little on the case. However, there was no testimony that any court dates were missed during this time period. The respondent testified that he made numerous attempts to get Mr. Mathis to sign the interrogatories and he just would not cooperate. Therefore, the respondent sent unsigned answers to opposing counsel in an effort to be in compliance with the discovery rules.

There came a point in time when the respondent determined that the case was really too much for him to handle. The Respondent then recommended two other attorneys and a paralegal to Mr. Mathis. A meeting was arranged and Mr. Mathis agreed to hire Mr. Frison to handle the litigation.

Mr. Frison was not barred in Maryland so he had to be moved into practice in the Circuit Court pro hoc vice for the purpose of this litigation and the respondent was required to stay in as local counsel. At the next court hearing, the respondent appeared with Mr. Frison. Mr. Frison handled the discovery process. The respondent minimally participated in the lawsuit from May 2004 through August of 2004. There came a time when the respondent and Mr. Frison had a difference of opinion concerning the strategy of the case. Mr. Mathis, however, agreed with Mr. Frison's approach. Thereafter, the respondent sought to withdraw from the case and Mr. Frison sought new local counsel. The trial proceeded without the respondent's participation and Mr. Mathis was not successful. Additionally, the respondents' appearance was never stricken from the case.

Mr. Frison then sued Mr. Mathis for attorney fees. The respondent was brought into the suit as a third party. The court found for Mr. Frison and dismissed the suit against the respondent. The complaint with Bar Counsel was subsequently filed.

On May 19, 2006, a second letter was sent by Bar Counsel. The letter was returned to Bar Counsel's office unclaimed on or about July 20, 2006. On or about July 7, 10, 11, and 14, 2006, Attorney Grievance Commission (here-

inafter referred to as the Commission) investigator Michael Peregoy attempted to contact respondent by telephone to arrange an interview. The respondent did not respond to Bar Counsel's letters until July 24, 2006. The July 24, 2006 response included 31 pages meticulously addressing every issue raised in the Mathis complaint and attached thereto all of the supporting documentation surrounding his representation of Mr. Mathis.

### CONCLUSIONS OF LAW

#### I. *Trust Account Over Draft*

After reviewing all the evidence, considering argument of counsel and making the above referenced factual findings, this Court finds that Bar Counsel/the Commission has not met its burden by clear and convincing evidence of proving that the respondent has violated:

Rule 1.15 Safekeeping Property

Rule 8.1 Bar Admission and Disciplinary Matter

Rule 8.4 Misconduct

Although, the respondent should be counseled on the management of a trust account, at no time were client funds ever involved in any transaction concerning this account. The Commission further alleges that a violation of Rule 8.1 occurred. The respondent did not knowingly fail to respond to a lawful demand for information. While the respondent may not have responded as promptly as requested, the rules do not proscribe a time limit in which to respond. Respondent, nonetheless, responded thoroughly and openly. There is simply no evidence to support a violation of Rule 8.4.

#### II. *Jerry J. Mathis Representation*

The Commission has alleged a violation of Rule 1.3, 1.4, 1.5, 3.2, 3.4, 8.1 and 8.4. After reviewing all the evidence, considering argument of counsel and making the above referenced factual findings, this Court finds that the Commission has not met its burden by clear and convincing

evidence of proving that the alleged violations have occurred.

The respondent actively engaged in the representation of Mr. Mathis even before a retainer agreement was signed and before any form of payment was rendered. Once the respondent was notified by Mr. Mathis that Mr. Hargrove had sued him and a motion for order of default was pending, the respondent immediately filed the appropriate pleadings. While Mr. Mathis may not have been satisfied with the representation provided by the respondent, that dissatisfaction does not equate to a violation of the rules of professional conduct. Bar Counsel's continued inquiry into this complaint may have been prompted by the perceived lack of response by the respondent, but again the rules do not proscribe a time limit in which to respond and the respondent provided a thorough response to Bar Counsel's inquiry in his July 24, 2006 letter as referenced above. Furthermore, the Commission has failed to produce evidence supporting its allegations by clear and convincing evidence that the respondent violated the above stated rules."

Bar Counsel excepts to the hearing judge's failure to find violations of Rule 1.15, Rule 8.1, and Rule 16–607. Respondent did not file exceptions to the hearing judge's findings of fact or conclusions of law, nor did respondent file a response to Bar Counsel's exceptions.

## II.

This Court has original and complete jurisdiction in attorney discipline proceedings. *Attorney Grievance v. Kreamer,* 404 Md. 282, 291, 946 A.2d 500, 505 (2008) ("*Kreamer II* "). We generally accept the hearing judge's findings of fact unless they are clearly erroneous but review conclusions of law *de novo. Id.* at 292, 946 A.2d at 505. The burden is on Bar Counsel to establish the allegations by clear and convincing evidence. *Id.* We give due regard to the trial judge's finding on credibility, as the trial judge is in the best position to assess the witnesses credibility. *Attorney Griev. Comm'n v. Bakas,* 323 Md. 395, 402–03, 593 A.2d 1087, 1091 (1991).

The ultimate determination as to an attorney's alleged misconduct, however, is reserved for this Court. *Attorney Grievance v. Garfield,* 369 Md. 85, 97, 797 A.2d 757, 764 (2002).

Bar Counsel excepts to the hearing judge's failure to find that respondent violated Rule 1.15. The hearing judge reasoned that the Rule was not violated because "at no time were client funds ever involved in any transaction concerning this account." Rule 1.15(b) provides that "[a] lawyer may deposit the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account, but only in an amount necessary for the purpose."

At the hearing, Bar Counsel introduced a letter respondent sent to Bar Counsel. A portion of the letter reads as follows:

"I am a sole practitioner. After reviewing the rules governing the use of trust accounts, let me state that my use of the account violated the rules. Although I did not know the full extent of the requirements under the rule, I should have known. I mistakenly believed (1) that my fee for legal services could be retained in the account after disbursement of client proceeds; (2) that the account could be used for personal use as long as client funds were no longer in the account; and (3) that a debit card could be used to access and manage the account. After a more in-depth review of the rules and after conferring with other attorneys, I now realize that this was not correct."

We need not spend much time on this issue because respondent recognizes that he violated the Rule by depositing personal funds into the trust account in excess of the amount needed to cover bank charges, and, therefore, he was at least technically in violation of the Rule. He conceded as much at oral argument before this Court.[11] Respondent's use of the

---

11. Counsel for respondent conceded the issue at oral argument, stating as follows:

"Although I would like to argue that the trial court's finding that there was no violation [of Rule 1.15] should be upheld, I can't say that. I think when Judge Adams ruled that there was no violation of that Rule, I think the court there was looking at the consequence of

attorney trust account to pay an office phone bill and his subsequent deposit to cover the overdraft violated Rule 1.15, notwithstanding the hearing judge's finding that there was no commingling with or misuse of client funds. We grant Bar Counsel's exception and hold that respondent violated Rule 1.15.[12]

■ Bar Counsel excepts also to the hearing judge's failure to find a violation of Maryland Rule 16–607, which provides that "[a]n attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16–604 or permitted to be so deposited by section b. of this Rule." [13] The hearing judge made no findings with respect to Rule 16–607. The exception to the Rule set out in section b. is inapplicable; there is no question that respondent deposited personal funds into the trust account in excess of permissible amounts necessary to maintain the ac-

---

what happened and announcing that there was no dishonesty, there was nothing unethical that he did; it was just poor bookkeeping, if you will. I have to concede that there were firm or attorneys' monies in that account that should not have been in that account, and that was not proper—it was a violation. . . ."

12. Rule 1.15 was amended March 12, 2007, effective January 1, 2008. Although the conduct at issue is governed by the former version of Rule 1.15, set forth *supra* at n. 2, Rule 1.15(b) currently reads as follows:

"A lawyer may deposit the lawyer's own funds in a client trust account only as permitted by Rule 16–607(b)."

Maryland Rule 16–607(b) remains unaffected by the amendment, *see supra* n. 1, and Taylor's conduct would violate the current version of Rule 1.15(b).

13. Rule 16–604 provides as follows:

"Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in this State from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in a attorney trust account in an approved financial institution. This Rule does not apply to an instrument received by an attorney or law firm that is made payable solely to a client or third person and is transmitted directly to the client or third person."

count and that the account was intended to be used to disburse personal and business related expenses.

Respondent's counsel represented at oral argument that respondent had opened the trust account to deposit monies from the settlement of one wrongful death case and that he made a mistake of leaving his fee in the account, not knowing that he should have withdrawn it promptly. He no longer used the account as a client trust account and began to pay bills and personal expenses from the account, maintaining the account in the event that he would have another personal injury case.

█ This Court has made clear that a trust account may not be used for personal purposes, even if client funds are not in the account. An attorney violates the Rule if a trust account, still denominated as a trust account, is used for personal matters, even if the attorney no longer intends to use it for trust purposes. *See Attorney Griev. Comm. v. Webster,* 348 Md. 662, 677, 705 A.2d 1135, 1142 (1998). We stated in *Webster* the following:

"We agree with the Supreme Court of California that when an account is designated an attorney trust account, inquiry into the source of the funds within the account is irrelevant. Use of the trust account for personal purposes while still designated a trust account, even if it was no longer intended that the account be used for trust purposes, is prohibited. It makes no difference whether client funds are deposited in the account.

The purpose of the anti-commingling rules is to protect client funds from the claims of creditors of the attorney. Using an account designated an attorney trust account, when it no longer actually serves as such, constitutes a holding out to the public that the monies contained therein are not subject to attachment and improperly suggests that the monies are beyond the reach of creditors of the attorney. In this case, when Respondent put his personal funds into an account entitled 'escrow account' he improperly represented to his creditors that those funds were being

held for a third party. An attorney may not avoid responsibility for misuse of a trust account, even if such misuse was inadvertent."

*Id.* at 677–78, 705 A.2d at 1142–43 (internal citations omitted). Respondent's use of the attorney trust account violated Rule 16–607, even if no client funds were in the account. The account, designated as an attorney trust account, constituted a holding out to the world that the monies contained in the account were not subject to attachment and were beyond the reach of any creditors. Accordingly, we grant Bar Counsel's exception.

■ Bar Counsel excepts to the hearing judge's failure to find a violation of Rule 8.1 for failing to respond to Bar Counsel. The relevant portion of Rule 8.1(b) states that a lawyer shall not, "knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority." In finding that respondent did not knowingly violate Rule 8.1, the hearing judge concluded, "[w]hile the respondent may not have responded as promptly as requested, the rules do not proscribe a time limit in which to respond."

Bar Counsel argues that Rule 8.1 was violated. Respondent received letters from Bar Counsel sent on January 10, 2006, February 21, 2006, March 16, 2006, and April 4, 2006. Bar Counsel received a partial reply on or about April 11, 2006, after which Bar Counsel sent two more letters before receiving a full response. Bar Counsel also sent letters on May 2 and May 19, 2006, requesting information about a second matter. Respondent did not respond until July 24, 2006. Additionally, Bar Counsel made at least four attempts to reach respondent by telephone, each time leaving a message that went unreturned. Respondent argues that his "tardiness" in responding to Bar Counsel was precipitated by a "depressive [mental] state" which affected his "responsiveness to obligations, duties and requirements."

■ Bar Counsel's letters to respondent were lawful demands for information. *See Attorney Grievance v. Fezell,* 361 Md. 234, 252, 760 A.2d 1108, 1118 (2000) ("Respondent's

argument that the letters of Bar Counsel were merely requests to respond, as opposed to demands, is plainly frivolous."). The Commission's authority to make lawful demands for information carries with it the authority to demand that attorneys furnish Bar Counsel with the requested information timely and within a reasonable period of time. *See, e.g., Attorney Grievance v. Sapero,* 400 Md. 461, 486, 929 A.2d 483, 498 (2007) (holding that an attorney violates Rule 8.1(b) when he fails to make a timely and orderly reply even though the failure was because of disorganization in his record keeping practices).

In *Attorney Grievance v. Kreamer,* 387 Md. 503, 530, 876 A.2d 79, 95 (2005) (*"Kreamer I"*), we addressed an attorney's failure to respond to Bar Counsel. Bar Counsel's letter, sent on August 28, 2003, to Ms. Kreamer, citing Rule 16–731(d) and Rule 8.1, noted concern about completing the investigation within the time established and requested a written response within ten days. Bar Counsel's September 8 letter referenced the first letter, gave Ms. Kreamer seven days to reply, and reminded Ms. Kreamer of Rule 8.1. Bar Counsel's October 15 letter granted Ms. Kreamer's oral request for an extension and noted that her response was expected by October 29, 2003. Kreamer made no written response to three letters from the Commission. We held that Ms. Kreamer violated Rule 8.1, stating that "Ms. Kreamer's eventual response to the Commission, while certainly much better than no response at all, does not excuse her repeated failures to respond in writing, as requested by the Commission several times." *Id.* at 531, 876 A.2d at 96.

Similarly, in *Fezell* we noted that, "[t]his Court has a long history of holding that an attorney violates Rule 8.1(b) by failing to respond to letters from disciplinary authorities requesting information." *Fezell,* 361 Md. at 249, 760 A.2d at 1116. We found that the respondent violated Rule 8.1 when he failed to respond to five letters from Bar Counsel, although he did ultimately respond by phone, holding that, "[e]ven viewing the phone call in the light most favorable to respondent, his belated cooperation with Bar Counsel does not

excuse respondent's failure to respond to the previous five letters sent by Bar Counsel." *Id.* at 253, 760 A.2d at 1118. We noted that, "[t]he practice of law carries with it special responsibilities of self-regulation, and attorney cooperation with disciplinary authorities is of the utmost importance to the success of the process and the integrity of the profession." *Id.* at 255, 760 A.2d at 1119. In the instant case, that Bar Counsel's efforts led ultimately to a response cannot wholly excuse respondent's repeated failures to reply timely.

The hearing judge found that Bar Counsel had sent four letters to respondent before respondent replied in an incomplete fashion nearly three months after Bar Counsel's initial letter. While respondent may have ultimately "responded thoroughly and openly," an untimely response does not excuse the failure to timely respond. Bar Counsel's persistence will not absolve an attorney of the responsibility to make a reasonably prompt reply.

In addition to his argument that his ultimately thorough response satisfied Rule 8.1, respondent argues that he did not *knowingly* fail to respond to Bar Counsel. He argues that respondent's inaction was brought about by his depressed state, which in turn was brought about by his health issues and other circumstances. The hearing judge, in her memorandum opinion, recited the testimony of the two physicians, but failed to make any findings of fact with respect to the alleged depression from which respondent may have been suffering, and more importantly, did not make any findings as to whether respondent's depression was the cause of his failure to respond to Bar Counsel in a timely fashion. It is clear, however, that in finding that Bar Counsel failed to establish a violation of Rule 8.1, the hearing judge was at least *influenced* by respondent's mental state at the time of the investigation into his conduct.

Ordinarily, we would remand this matter to the hearing judge to make findings of fact as to respondent's claim that his failure to timely respond was not a knowing failure. We need not do so in this case because respondent has violated Rules

1.15 and 16–607 and, given the circumstances, the sanction would be no different even if Rule 8.1 had been violated. *See Attorney Grievance v. Lanocha*, 392 Md. 234, 241, 896 A.2d 996, 1001 (2006). Given the hearing judge's conclusions, respondent's depressed mental state, while perhaps not rising to the level of a psychiatric disorder, is relevant to the proper sanction.

### III.

Having found that respondent violated Rule 1.15 and 16–607, we turn now to the sanction. We are mindful that our aim is to protect the public and the public's confidence in the legal profession rather than to punish the attorney. *Kreamer II*, 404 Md. at 348, 946 A.2d at 539. We aim also to deter other lawyers from violating the Rules of Professional Conduct. *Id.* The public is best protected when sanctions are imposed commensurate with the nature and the gravity of the misconduct and the intent with which it was committed. *Attorney Grievance v. Reinhardt*, 391 Md. 209, 223, 892 A.2d 533, 541 (2006).

The severity of the sanction depends upon the facts and circumstances of the case, taking account of any particular aggravating or mitigating factors. *Attorney Griev. Comm. v. Glenn*, 341 Md. 448, 484, 671 A.2d 463, 480 (1996). In determining the appropriate sanction, we have often looked to the American Bar Association's *Standards for Imposing Lawyer Sanctions*, reprinted in Lawyers' Manual on Professional Conduct (2003) (*ABA Standards* ). *Id.* at 488, 671 A.2d at 483. These standards create an organizational framework that calls for a consideration of four questions: (1) What is the nature of the ethical duty violated?; (2) What was the lawyer's mental state?; (3) What was the extent of the actual or potential injury caused by the lawyer's misconduct?; and (4) Are there any aggravating or mitigating circumstances? *See ABA Standards*, Standard 3.0, at 17. Also relevant are the following factors:

"Absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses."

*Id.* at 488–89, 671 A.2d at 483 (quoting *ABA Standards,* Standard 9.32, at 41–42).

Bar Counsel recommends a suspension from the practice of law for at least 60 days. In light of the totality of the circumstances, we find that a reprimand is appropriate.

 There are several mitigating factors in this case. Bar Counsel made clear that there was no allegation in this case of misappropriation or commingling of client funds. Respondent's misuse of the attorney trust account occurred at a time when he was intending to close his practice. Although respondent failed to make timely responses to Bar Counsel's requests for information, the hearing judge found that he ultimately "responded thoroughly and openly" and that he was mentally depressed and was not functioning normally. Additionally, the absence of a selfish or dishonest motive is a mitigator. Respondent has no prior disciplinary record, and his conduct neither was dishonest nor in any way resulted in actual harm to any client. Accordingly, we impose a reprimand as the appropriate sanction.

*IT IS SO ORDERED. RESPONDENT TO PAY ALL COSTS AS TAXED BY THIS COURT, INCLUDING THE COSTS OF TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761 FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST MICHAEL F. TAYLOR.*