999 A.2d 1040

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

**Martin Bernard BROWN.**

**Misc. AG No. 3, Sept. Term, 2009.**

Court of Appeals of Maryland.

July 27, 2010.

**270**

Fletcher P. Thompson, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Commission of Maryland), for petitioner.

Charles G. Byrd, Jr. of Alston & Byrd of Baltimore, MD, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, and BARBERA, JJ.

ADKINS, J.

The Attorney Grievance Commission of Maryland ("AGC"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action ("Petition") against Respondent Martin Bernard Brown. Bar Counsel charged Brown with violating the Maryland Rules of Professional Conduct ("MRPC") in his capacity as representative of Roberto Garcia. Specifically, Bar Counsel alleged that Brown violated the following rules: (1) Rule 4.1 (Truthfulness in Statements to Others);[1] (2) Rule

---

1. Rule 4.1 Truthfulness in Statements to Others

8.1 (Bar Admission and Disciplinary Matters);[2] and (3) Rule 8.4 (Misconduct).[3] Bar Counsel also charged Brown with violating Maryland Rule 16–609(a) and (b), which prohibits certain transactions with regard to attorney trust accounts:

### Rule 16–609. Prohibited transactions.

a. **Generally.** An attorney or law firm may not borrow or pledge any funds required by the Rules in this Chapter to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose.

b. **No cash disbursements.** An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer, and no cash withdrawal may be made from an automated teller machine or by any other method. All disbursements from an attorney trust account shall be made by check or electronic transfer.

---

(a) In the course of representing a client a lawyer shall not knowingly:
(1) make a false statement of material fact or law to a third person; or
(2) fail to disclose a material fact when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client.
(b) The duties stated in this Rule apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.

2. **Rule 8.1 Bar Admission and Disciplinary Matters**
An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
(a) knowingly make a false statement of material fact....

3. **Rule 8.4 Misconduct**
It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\* \* \*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice....

Following a hearing before a judge of the Circuit Court for Baltimore City, the hearing judge issued Findings of Fact and Conclusions of Law, in which she found by clear and convincing evidence that Brown violated Maryland Rule 16–609 and MRPC Rules 4.1(a)(1), 8.1(a), 8.4(c) and 8.4(d).

The AGC's investigation of Brown was triggered by the complaint of Dianne L. Coston, the grantor of a mortgage to Hilda Nelson that had been assigned to Roberto Garcia. The hearing judge made the following findings of fact by clear and convincing evidence:

(1) Respondent, Martin Bernard Brown, Esq., was admitted as a member of the bar of the Court of Appeals of May 25, 1982 and maintains an office for the practice of law at 1714 St. Paul Street, Baltimore, Maryland 21202.

(2) Respondent has no disciplinary record.

(3) Complainant, Dianne L. Coston, is the owner of a residence at 407 Commonwealth Avenue.

(4) On April 27, 1994, she purchased the residence from the estate of her grand aunt, Alena Bacon. Her aunt, Hilda Nelson, daughter of Alena Bacon, was the personal representative and sole heir of the estate.

(5) In connection with this transaction, Ms. Coston executed a mortgage in favor of Ms. Nelson in the amount of $11,000.00.

(6) In December 2001, she refinanced the property through a commercial lender.

(7) As part of the refinancing, she was required to pay off the mortgage. At the time of the refinancing Hilda Nelson had died. The beneficiary of her estate and owner of the mortgage was her son, Roberto Garcia. Mr. Garcia and Ms. Coston are cousins.

(8) The initial check connected to this transaction was issued to the Estate of Hilda Nelson and was never cashed.

(9) On June 20, 2002, the lender issued a second check in the amount of $6,690.00 to respondent and Mr. Garcia. At the time of the issuance of the check, respondent was

representing Garcia in connection with another matter. He agreed to accept the check on behalf of Garcia.

(10) This check was endorsed by respondent and by Mr. Garcia and deposited in respondent's trust account on October 7, 2002.

(11) On October 7, 2002, respondent drew on his trust account a check to cash in the amount of $6,690.00, which he gave to Garcia. Respondent only endorsed the check.

(12) The lender did not send a release in conjunction with the check. Mr. Garcia never signed a release in connection with his receipt of the check. Respondent was not Ms. Coston's attorney and had no obligation to prepare a release for her.

(13) In 2004, Ms. Coston wanted to refinance her home again in order to make needed repairs.

(14) When she attempted to obtain a new loan, she learned that she could not do so because the mortgage had not been released.

(15) On October 18, 2004, Ms. Coston complained to Petitioner about the fact that respondent had not obtained a release of the mortgage from Mr. Garcia.

(16) On October 20 and November 15, 2004, Bar Counsel wrote to Respondent requesting an answer to Ms. Coston's complaint that she had not received a release from Respondent.

(17) On November 23, 2004, Respondent stated in a letter to Bar Counsel that before he received the complaint he had spoken to Complainant and subsequently "prepared the Release of Mortgage and mailed it to Mr. Garcia's address."

(18) He further stated "Thereafter, I received a copy of your letter from Mrs. Coston indicating that Mr. Garcia was incarcerated." Respondent said that he had spoken to Mrs. Coston twice since receiving the complaint and had advised her that he had sent a release to Mr. Garcia. He concluded his letter by stating "Once I learn where Mr. Garcia is incarcerated, I will forward a release of mortgage to him for his execution and subsequent filing in the Land Records of Baltimore County."

(19) On December 3, 2004, Bar Counsel declined to take any further action on Ms. Coston's complaint.

(20) A copy of Respondent's letter was forwarded to Ms. Coston in connection with the dismissal of the complaint.

(21) On September 26, 2007, Bar Counsel wrote to respondent concerning the status of the release after receiving a telephone call from Mrs. Coston stating that she had never received one.

(22) On October 16, 2007, Respondent advised Bar Counsel in a letter that he had spoken to Mrs. Coston. He further represented: "Mr. Garcia never signed the release." He proposed that Mrs. Coston file a petition to quiet title and that he would help her with this petition.

(23) Contrary to his representations to Bar Counsel and to Mrs. Coston, Respondent did not prepare or send to Mr. Garcia a release at any time. At the time Respondent made the statements to Bar Counsel and Ms. Coston, he knew that he had not sent a release to Mr. Garcia.

(24) Respondent admitted that he had not prepared or sent a release to Mr. Garcia in a statement under oath taken given to Assistant Bar Counsel Fletcher Thompson on March 24, 2008. This was the first time Respondent had advised either Bar Counsel's office or Ms. Coston that he had never sent any release to Mr. Garcia.

(25) By representing to Ms. Coston that he was attempting to obtain a release from Mr. Garcia when he was not doing so, Respondent contributed to Ms. Coston's delay in taking action on her own behalf. Through the efforts of Respondent's former counsel, Edward Smith, Esq., Ms. Coston has now obtained a release of the mortgage.

(26) Respondent's explanation for his initial representation to Bar Counsel in his letter of November 23, 2004 that he had sent a release to Mr. Garcia was that at the time he wrote the letter he intended to send a release but never followed through on this intention.

From these facts the hearing judge concluded that Brown violated all of the charged Rules. Specifically, she opined:

Respondent violated Maryland Rule 16–609, providing that "An instrument drawn on attorney trust account may not be drawn payable to cash or to bearer," by drawing a check to the trust account to cash. *Attorney Grievance Comm'n v. Harper,* 356 Md. 53 [737 A.2d 557] (Md.1999).

Moreover, his representation to Ms. Coston and to Bar Counsel that he had sent a release to Mr. Garcia constitutes a violation of the Maryland Lawyer's Rules of Professional Conduct 4.1(a)(1), 8.1(a), 8.4(c) and 8.4(d). Rule 4.1(a)(1) provides that attorneys shall not make false statements of fact to third parties in the course of their representation of a client; Respondent's representations to Ms. Coston amounted to such false statements. Rule 8.1(a) provides that attorneys in connection with disciplinary matters shall not make false statements of material fact; Respondent's statements to Bar Counsel constitute a violation of this rule. Finally, Rule 8.4(c) and (d) provide that it is professional misconduct for attorneys to engage in conduct involving dishonesty, fraud, deceit or misrepresentation, or that is prejudicial to the administration of justice; the sum of Respondent's actions constitute such prohibited conduct.

## DISCUSSION

### *Standard of Review*

"In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record." *Attorney Grievance Comm'n v. McClain,* 406 Md. 1, 17, 956 A.2d 135, 144 (2008).

Even though conducting an independent review of the record, we accept the hearing judge's findings of fact unless they are found to be clearly erroneous. This Court gives deference to the hearing judge's assessment of the credibility of witnesses. Factual findings by the hearing judge will not be interfered with if they are founded on clear and convincing evidence. All proposed conclusions of law made by the hearing judge, however, are subject to *de novo* review by this Court.

*Attorney Grievance Comm'n v. Ugwuonye,* 405 Md. 351, 368, 952 A.2d 226, 235–36 (2008) (citations omitted). Both parties are permitted to file "(1) exceptions to the findings and conclusions of the hearing judge and (2) recommendations concerning the appropriate disposition...." Md. Rule 16–758(b). If neither party files any exceptions, "the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any." Md. Rule 16–759(b)(2)(A).

### *Exceptions*

Neither Bar Counsel nor Respondent Brown note any exceptions to the judge's findings of fact or conclusions of law. Thus, we accept the lower court's findings of fact as established.

### *Conclusions of Law*

■ According to the express language of Maryland Rule 16–609(b), an attorney is prohibited from drawing an instrument on an attorney trust account "payable to cash or to bearer...." Unquestionably, Brown violated this Rule by drawing on his trust account a check payable to cash in the amount of $6,690.00, which he then gave to Garcia.

■ MRPC Rule 4.1(a)(1) forbids a lawyer from knowingly making a false statement of material fact or law to a third person, while MRPC Rule 8.1(a) prohibits a lawyer from knowingly making a false statement of material fact in connection with a disciplinary matter. Brown's misrepresentations to Coston and Bar Counsel that he had prepared a release and sent it to Garcia violated these rules because, at the time Brown made them, he knew them to be untrue. His statements were of facts clearly material to the AGC's disciplinary investigation because they prompted Bar Counsel to dismiss Coston's original complaint. *Cf. Attorney Grievance Comm'n v. Nussbaum,* 401 Md. 612, 641, 934 A.2d 1, 18 (2007) ("Respondent's knowing misrepresentation of the legitimacy of his ledger entries to Bar Counsel certainly violated MRPC 8.1(a) as the timing of the entries was a fact material to Counsel's investigation of Respondent's misconduct."). Finally, these

communications violated MRPC 8.4(c) and (d) because they were dishonest, deceitful, and impeded Bar Counsel's investigation, making them prejudicial to the administration of justice. *See Attorney Grievance Comm'n v. McLaughlin,* 409 Md. 304, 315–17, 974 A.2d 315, 321–23 (2009) (holding that Respondent violated MRPC 8.4 by misrepresenting to Bar Counsel the length of time he was using his escrow account like an operating account).

### *Sanction For Violations of MRPC Rules 4.1(a)(1), 8.1(a), 8.4(c), 8.4(d), and Maryland Rule 16–609*

Having determined that Brown violated MRPC Rules 4.1(a)(1), 8.1(a), 8.4(c), 8.4(d), and Maryland Rule 16–609, we must now endeavor to fashion the appropriate sanction. Bar Counsel recommends a one year suspension, arguing that case law indicates some period of suspension is appropriate for violations of Rule 8.1(a). Bar Counsel emphasizes that Brown made knowingly false statements on three separate occasions, not only to a third party, but also to Bar Counsel in connection with its disciplinary investigation. These intentional misrepresentations led Coston and Bar Counsel "to believe that he was attempting to assist [Coston] in obtaining a release for her mortgage, when he was not making any such effort." Brown, on the other hand, requests a 60–day suspension, contending that prior cases where deceitful attorneys had been suspended for longer periods of time involved additional improper conduct, e.g., commingling of funds in a trust account.

This Court imposes sanctions on errant attorneys "to protect the public and the public's confidence in the legal profession rather than to punish the attorney ... [and] to deter other lawyers from violating the Rules of Professional Conduct." *Attorney Grievance Comm'n v. Taylor,* 405 Md. 697, 720, 955 A.2d 755, 768 (2008). To accomplish this, the sanction should be "commensurate with the nature and the gravity of the misconduct and the intent with which it was committed." *Id.* Thus, the style and severity of the sanction "depends upon the facts and circumstances of the cases,

taking account of any particular aggravating or mitigating factors." *Id.* When assessing the appropriate result, we often refer to the American Bar Association's *Standards for Imposing Lawyer Sanctions,* which advises the consideration of four questions: "(1) What is the nature of the ethical duty violated?; (2) What was the lawyer's mental state?; (3) What was the extent of the actual or potential injury caused by the lawyer's misconduct?; and (4) Are there any aggravating or mitigating circumstances?" *Id.* at 720, 955 A.2d at 768–69. Possible mitigating factors include:

> absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Attorney Grievance Comm'n v. Sweitzer,* 395 Md. 586, 599, 911 A.2d 440, 448 (2006) (*quoting Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 488–89, 671 A.2d 463, 483 (1996)).

We agree with Bar Counsel that, here, any sanction less than a suspension would be inappropriate. *See Attorney Grievance Comm'n v. Lee,* 393 Md. 385, 414, 903 A.2d 360, 378 (2006) ("The intentional dishonesty committed by Respondent in his communication with Bar Counsel makes a reprimand inappropriate."). Yet, at the same time, we believe that Brown's misconduct does not rise to the level of disbarment or indefinite suspension, recognizing that cases where those sanctions were imposed generally involved more egregious conduct. *See, e.g., McLaughlin,* 409 Md. at 329, 974 A.2d at 329 (indefinitely suspending an attorney who negligently misappropriated client funds and then lied to Bar Counsel about the extent to which he commingled funds in his personal and escrow account); *Nussbaum,* 401 Md. at 648, 934 A.2d at 22 (disbarring an attorney who misappropriated client funds and

then provided Bar Counsel with altered ledgers to hide his misconduct); *Attorney Grievance Comm'n v. Kapoor,* 391 Md. 505, 532, 894 A.2d 502, 518 (2006) (disbarring an attorney who settled his client's case without the client's authorization, deposited the settlement check into the attorney's personal account, and then made false statements to Bar Counsel during the investigation); *Attorney Grievance Comm'n v. Ellison,* 384 Md. 688, 716–17, 867 A.2d 259, 275–76 (2005) (disbarring an attorney who improperly handled property belonging to a third-party assignee, distributed settlement proceeds without paying the assignee, and then misrepresented his actions to Bar Counsel); *Attorney Grievance Comm'n v. Granger,* 374 Md. 438, 462, 823 A.2d 611, 625 (2003) (indefinitely suspending, with the right to apply for readmission in no sooner than six months, an attorney who neglected to file his client's bankruptcy petition, resulting in the loss of her home, and then misrepresented to Bar Counsel his arrangement with his client regarding her bankruptcy matter).

In looking at the nature of Brown's violations, we recognize that they did not grow out of a single act of dishonesty, but rather are based on three separate instances of deliberate deceit. Brown misrepresented to Coston that he had sent a release to Garcia. He then duplicated this lie to Bar Counsel on two separate occasions. Significantly, his misrepresentations impeded Coston's ability to refinance her property and obstructed Bar Counsel's investigation. In addition to the deceit, Brown improperly withdrew funds from his trust account by drawing Garcia's check payable to cash.

Yet, we must also weigh Brown's misconduct against the mitigating factors in this case. First, we note that Brown's 28-year record as a member of the Maryland Bar is otherwise impeccable. Second, we recognize that Coston was not Brown's client, and thus Brown had no duty to draft a release on her behalf. Third, while Brown's improper withdrawal of funds from his client's trust account via a check payable to cash was certainly a serious violation, he did not aggravate that offense by misusing those funds for personal financial gain. Fourth, despite his earlier hindrance of Bar Counsel's

initial investigation, Brown has conceded wrongdoing before this Court and appears willing to take responsibility for his actions. Finally, although Brown's statements initially delayed the refinancing of Coston's property, Brown later assisted his counsel, Edward Smith, in procuring the necessary release from an uncooperative Garcia. Both attorneys provided this service to Coston free of charge.

Ultimately, an examination of the totality of the circumstances in this case persuades us that suspension for 90 days is appropriate.[4] We shall so order.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS**

---

4. The dissent urges us to suspend Brown for 180 days. We believe, however, that the cases it cites to support this harsher sanction are distinguishable from the situation here. In *Attorney Grievance Comm'n v. Granger*, 374 Md. 438, 462, 823 A.2d 611, 625 (2003), the attorney's neglect resulted in the loss of his client's home. He then lied to his client about the status of her home, continuing to tell her it was safe even after she told him that she had received a card from the person who had bought her home at the foreclosure sale. *Id.* at 446, 823 A.2d at 616. In *Attorney Grievance Comm'n v. Cohen*, 361 Md. 161, 760 A.2d 706 (2000), the attorney's violations arose from his representation of not one, but three separate clients. With regard to one client's bankruptcy matter, Cohen converted the case to a Chapter 7 action "without . . . logical explanation[ ]" and then failed to amend his client's Schedule C, "thereby depriving [his client] of the minimal amount of exempt property guaranteed to all debtors under federal law." *Id.* at 173–74, 760 A.2d at 713. This resulted in "financial disaster" for his client, enabling the Trustee to exhaust all assets, including the client's savings, which originated from his pension fund. *Id.* Furthermore, Cohen had established "an alarming pattern of incompetence, a lack of diligence, and a lack of communication with his clients[,]" having already received a private reprimand for prior misconduct. *Id.* at 177, 760 A.2d at 715. Ultimately, the violations of both Granger and Cohen produced more devastating results than what occurred here, a factor we often consider. *See Attorney Grievance Comm'n v. Taylor*, 405 Md. 697, 720, 955 A.2d 755, 768–69 (2008). Thus, this case does not warrant the six month indefinite suspension that was issued against those attorneys.

Finally, the dissent cites *Attorney Grievance Comm'n v. Smith*, 405 Md. 107, 950 A.2d 101 (2008), where the attorney impersonated a police officer in a telephone call in order to intimidate a witness. We agree with the dissent when it characterizes this conduct as an "extreme misrepresentation" and a "very serious violation[.]" Dissent op. at 415 Md. at 285, 999 A.2d at 1050. As a result, Smith was convicted of

COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761. JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST MARTIN BERNARD BROWN IN THE SUM OF THESE COSTS.

HARRELL, BATTAGLIA, and BARBERA, JJ., Concur and Dissent.

HARRELL, J., concurring and dissenting.

I agree with the Majority opinion in all respects, save the length of the suspension. Rather than the 90–day suspension meted out by the Majority, I would suspend Brown for 6 months.

The Majority opinion makes little attempt to reconcile the facts of the present case (and the resultant flagship violations of MRPC 8.1(a) and 8.4(c) and (d)) with those of any other arguably analogous case, other than to conclude what the sanction should not be. Maj. op. at 415 Md. at 279–82, 999 A.2d 1046–48. While I agree that the facts do not bring this case within the gravitational field of the disbarment and indefinite suspension cases as such, it strikes me as requiring some further analysis before settling on a 90–day suspension because of the "totality of the circumstances" (Maj. op. at 415 Md. at 281–82, 999 A.2d at 1047–48),[1] especially where some of the circumstances expressed in the Majority opinion's conclusions are dubious in my view.[2] When that further analysis is

---

impersonating a police officer and witness intimidation, although those convictions were later overturned on procedural grounds. *Id.* at 116, 950 A.2d at 106. While it is true that there were many mitigating factors in *Smith*, the underlying offense was so egregious that a weighing of the factors lead to a six month indefinite suspension. While, here, we do not look lightly upon Brown's misconduct, we do not believe it rises to the level of *Smith*.

1. Respondent has been of scant assistance on this score, having filed no written response to Bar Counsel's Recommendation for Sanction. At oral argument, his counsel suggested a 60–day suspension, without much support for that result.

2. For example, the Majority opinion asserts, op. at 415 Md. at 281–82, 999 A.2d at 1047–48, that, although Brown improperly withdrew funds

undertaken, it points me to a different result than that reached more summarily by the Majority opinion.

*Attorney Griev. Comm'n v. Granger,* 374 Md. 438, 823 A.2d 611 (2003), although meting out an indefinite suspension with the right to apply for readmission no sooner than 6 months, actually is a persuasive case here as to the proper sanction. Granger misappropriated client fees, was not diligent or competent in his representation, and lied to Bar Counsel and his client about his bookkeeping and filing court papers, respectively. Bar Counsel sought indefinite suspension with the right to apply for readmission no sooner than one year. Granger sought a public reprimand.

It seems clear to me from the Court's sanctions analysis in *Granger* that what drew the Court to an indefinite suspension sanction was the misappropriation misconduct. *Granger,* 374 Md. at 460–62, 823 A.2d at 624–25. In triangulating on an appropriate period for a minimum sit-out time before Granger would become eligible to apply for readmission, however, the Court engaged in a different analysis, one in which it distinguished *Atty. Griev. Comm'n v. Cohen,* 361 Md. 161, 760 A.2d 706 (2000), from *Atty. Griev. Comm'n v. Brown,* 353 Md. 271, 725 A.2d 1069 (1999), on the basis of those respondents' mitigating evidence, i.e., prior and/or pending disciplinary record, singular or systemic nature of the violations, whether remorse was exhibited, and the existence and quality of efforts

---

from his client's trust account, Brown did not use the funds for personal gain. This framing of what transpired transposes to Brown's favor the very core of the MRPC 4.1(a)(1) violation. It is hardly to Brown's credit that he conveyed, by an improper means, the money due to Garcia as the "new" owner of the mortgage and beneficiary of Nelson's estate. In addition, the Majority opinion gives Brown credit, again on page 415 Md. at 281–82, 999 A.2d at 1047–48 of the opinion, because Coston was not his "client." I would give that little weight as a mitigating factor. When Brown volunteered to obtain a release from Garcia, he assumed a duty thereby owed to Coston. Otherwise, as to the Majority opinion's analysis of mitigating factors, I agree that Brown had no prior public disciplinary record before the Maryland Bar, that he ultimately acknowledged his violations and expressed remorse and contrition, and that he and his prior counsel undertook ultimately to remedy the absence of a release of the mortgage.

to make whole the wronged client. *Granger, Cohen,* and *Brown* also included violations for lying to Bar Counsel and their clients about material facts. At the end of the day, a minimum 6 month "sit-out" period for Granger (as in *Cohen* ) was deemed more appropriate than a one year period (as in *Brown* ). Respondent's misconduct here mimics Granger's and Cohen's MRPC 8.1(a) and 8.4(c) and (d) misconduct (and mitigation), but falls short of their other misconduct which warranted indefinite suspension. Parsing the reasoning supporting indefinite suspension in *Granger* from that which supported the setting of the minimum sit-out period sheds some light on Respondent's sanction. Accordingly, a flat 6–month suspension strikes me as appropriate here.

Also somewhat persuasive, but less so than *Granger* and *Cohen,* regarding assessment of the proper length of Brown's suspension, is *Atty. Griev. Comm'n v. Smith,* 405 Md. 107, 950 A.2d 101 (2008). *Smith,* in connection with representation of a client charged criminally with assaulting someone, misrepresented himself in a telephone call to the victim as a police officer in an effort to intimidate the victim, i.e., Smith lied. He was convicted criminally of impersonating a police officer. He also was found in the subsequent attorney disciplinary action to have violated principally MRPC 8.4(a)-(d). A host of mitigating factors accompanied this determination, including no prior disciplinary record, full cooperation with Bar Counsel and the Court, genuine remorse, no personal benefit from the misconduct, and singular occurrence. 405 Md. at 120–21, 950 A.2d at 108–09. While a very serious violation occurred, i.e., an extreme misrepresentation was perpetrated, the marshaled mitigators saved Smith from disbarment, but nonetheless resulted in a 6–month suspension. *Id.* at 130, 950 A.2d at 114.

Multiple intentional misrepresentations perpetrated by Brown are at the core of the present case. The mitigators in the present case, although not nearly as strong or numerous as those in *Smith,* bear some resemblance to the valid ones found in the present record. That Smith told a whopping big lie to one person and Brown multiple lies to different people, both nonetheless violated MRPC 8.4(c) and (d) (and Smith's

misconduct 8.4(a) and (b) as well). Both Smith (MRPC 3.4) and Brown (MRPC 4.1(a)) had singular complementary violations. I believe that Brown deserves, on balance, the same sanction that Smith received.

I would suspend Brown, therefore, for 6 months.

Judges BATTAGLIA and BARBERA authorize me to state that they join in the views expressed in my opinion.